UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                    :

J.C.,                    :

          Plaintiff,      :

    -against-          :  Case No. 22-cv-00323-KPF

                    :  **Oral Argument Requested**

ROBERT ALLEN ZIMMERMAN a/k/a BOB  :
DYLAN,                 :

          Defendant.     :

                    :

---------------------------------------------------------------x

## <u>MEMORANDUM OF LAW IN SUPPORT OF</u><br><u>DEFENDANT BOB DYLAN'S MOTION FOR SANCTIONS</u>

# TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................1

BACKGROUND ..................................................................................................................4

    A.    Mr. Isaacs and Mr. Gleason File the Complaint in Search of a Quick Payout ...............4

    B.    Mr. Isaacs and Mr. Gleason Attempt to Delay the Start of Discovery...........................5

    C.    Mr. Isaacs and Mr. Gleason Repeatedly Promise Discovery Responses, Grant
Themselves Unilateral Extensions, and Still Fail to Deliver......................................7

    D.    Mr. Isaacs and Mr. Gleason Fail to Produce Documents and the Court Again Orders
Them to Comply with Their Discovery Obligations ...............................................9

    E.    Under Threat of Sanctions, Mr. Isaacs and Mr. Gleason Misrepresent That Plaintiff
"Discharged" Them Three Days Before the July 22 Deadline ..................................12

    F.    Plaintiff Dismisses the Action After Mr. Gleason Admits Plaintiff Did Not Voluntarily
Discharge Counsel and Counsel Never Collected or Reviewed Thousands of Pages of
Documents .................................................................................................12

LEGAL STANDARD.........................................................................................................14

ARGUMENT ...................................................................................................................15

    A.    Mr. Isaacs and Mr. Gleason Should Be Sanctioned under Rule 37(b)(2) for Their
Willful and Continuous Discovery Violations ......................................................15

    B.    Second Circuit Precedent Supports Significant Penalties Against Mr. Isaacs and Mr.
Gleason .....................................................................................................18

        1.    Factor 1:  Mr. Isaacs and Mr. Gleason's Non-Compliance with Discovery Obligations
Was "Willful" ...........................................................................................18

        2.    Factor 2:  Monetary Sanctions Are the "Mildest" Sanction for Discovery Misconduct
22

        3.    Factors 3 and 4:  Mr. Isaacs and Mr. Gleason's Misconduct Lasted for Several
Months and They Failed to Comply with Their Discovery Obligations Despite Several
Warnings...................................................................................................23

    C.    The Dismissal of the Action with Prejudice Does Not Lessen the Need for Sanctions .24

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Auscape Intern. v. Nat'l Geographic Soc'y,*
   2003 WL 21976400 (S.D.N.Y. Aug 19, 2003) ................................................................. 15

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.,*
   602 F.2d 1062 (2d Cir. 1979) ................................................................. 19, 22

*City of Almaty, Kazakhstan v. Ablyazov,*
   2020 WL 5269554 (S.D.N.Y. Sept. 3, 2020) ................................................................. 24

*Copeland v. Rosen,*
   194 F.R.D. 127 (S.D.N.Y. 2000) ................................................................. 22

*Daval Steel Prods. v. M/V Fakredine,*
   951 F.2d 1357 (2d Cir. 1991) ................................................................. 15, 23

*DeCastro v. Kavadia,*
   309 F.R.D. 167 (S.D.N.Y. 2015) ................................................................. 18

*In re Fosamax Prod. Liab. Litig.,*
   2013 WL 1176061 (S.D.N.Y. Mar. 21, 2013) ................................................................. 19

*Guggenheim Cap., LLC v. Birnbaum,*
   722 F.3d 444 (2d Cir. 2013) ................................................................. 15, 18

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,*
   456 U.S. 694 (1982) ................................................................. 23, 24

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC,*
   2018 WL 4760345 (S.D.N.Y. Sept. 28, 2018) ................................................................. 15

*Local Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Constr.,*
   88 F. Supp. 3d 250 (S.D.N.Y. 2015) ................................................................. 19

*Martinez v. City of New York,*
   2018 WL 604019 (E.D.N.Y. Jan. 24, 2018) ................................................................. 19

*Nat'l Hockley League v. Metro. Hockey Club, Inc.,*
   427 U.S. 639 (1976) ................................................................. 24

*Penthouse Int'l, Ltd. v. Playboy Enters., Inc.,*
   663 F.2d 371 (2d Cir. 1981) ................................................................. 21, 23

*Quadrozzi v. City of New York,*
   127 F.R.D. 63 (S.D.N.Y. 1989) ................................................................. 24

ii

*Roadway Exp., Inc. v. Piper*,
    447 U.S. 752 (1980) ...........................................................................................16

*Seena Int'l, Inc. v. One Step Up, Ltd.*,
    2016 WL 2865350 (S.D.N.Y. May 11, 2016) ...................................................22

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
    328 F.R.D. 100 (S.D.N.Y. 2018)........................................................................18

*In re Thilman*,
    548 B.R. 1 (Bankr. E.D.N.Y. 2016) ..................................................................15

*Worldcom Network Servs., Inc. v. Metro Access, Inc.*,
    205 F.R.D. 136 (S.D.N.Y. 2002)..................................................................18, 23

## RULES

Fed. R. Civ. P. 26(f)(1) ..............................................................................5, 6, 23

Fed. R. Civ. P. 37(a)(4) ....................................................................................15

Fed. R. Civ. P. 37(b) ..........................................................1, 4, 14, 15, 16, 18, 23, 24

Local Civil Rule 1.4 ..........................................................................................16

Defendant Bob Dylan moves pursuant to Federal Rule of Civil Procedure 37 for sanctions against Daniel Isaacs and Peter Gleason, counsel for Plaintiff, for extensive discovery misconduct and repeated violations of the Court's Orders in the above-captioned matter.

## PRELIMINARY STATEMENT

Defendant regrets having to file this motion seeking sanctions against Plaintiff's counsel. But counsel's repeated violations of the discovery rules and multiple court orders—and the significant costs Defendant incurred as a result—compel this motion.  This is a paradigm case for sanctions to punish and deter discovery misconduct, and to preserve the integrity of our legal system.

In August 2021, Plaintiff's counsel filed a complaint in New York State Supreme Court publicly and falsely accusing Defendant of sexually abusing a minor over multiple weeks over 56 years ago, in April and May of 1965.  Counsel filed the Complaint even though the most rudimentary investigation would have revealed the claims to be false.  Counsel did not, for example, even attempt to speak to any of Plaintiff's siblings (including one who shared a room with Plaintiff during the relevant period), who would have told them Plaintiff's allegations were untrue.  They apparently did not even review Mr. Dylan's widely and publicly available 1965 touring schedule, which would have revealed he was on tour in California, British Columbia, and the UK for almost the entirety of April and May 1965.  Lastly, and most critically to the instant motion, Mr. Gleason represented to the Court at the July 28, 2022 conference that he and Mr. Isaacs did not even collect, let alone review, over a thousand pages of documents in Plaintiff's possession that purportedly related to Mr. Dylan—not before they filed the action, and not at any point after.  Had they reviewed the documents, they would have learned facts that undermine and cast an avalanche of doubt on the asserted claims.

The inescapable conclusion is that Mr. Isaacs and Mr. Gleason never intended to actually litigate this action. Instead, they filed the Complaint knowing it would generate worldwide media coverage, which it did, and then spent months trying to leverage that publicity and the threat of embarrassment to extract a settlement payment.

Mr. Isaacs and Mr. Gleason's actions after this case was removed to this Court confirmed they had no interest in litigating the merits of the case. Instead, they executed a delay-and-obstruct playbook by flouting their obligations under the Federal Rules and this Court's orders. Mr. Isaacs and Mr. Gleason's most egregious discovery failure was their refusal to produce documents in violation of both the discovery rules and this Court's orders. It took almost four months, numerous letters to the Court, and two explicit warnings from this Court regarding failure to comply with discovery obligations for Mr. Isaacs and Mr. Gleason to produce even a single document. When that production finally came—nearly one year into the litigation—it was woefully insufficient. Mr. Isaacs sent 49 pages of materials as a single PDF with no separation between documents or Bates stamps, and with many of the pages scanned so sloppily, they were unreadable. Worse, the production did not include a single email or electronic communication, despite Mr. Isaacs and Mr. Gleason having had in their possession for a month at least 60 responsive emails to and from Plaintiff that were produced by others in response to third-party subpoenas.

Recognizing the seriousness of the unfolding discovery misconduct, on July 15, 2022, the Court ordered Plaintiff and her counsel to produce by July 22, 2022 all documents responsive to Defendant's First Set of Requests for Production ("July 15 Order"), ECF No. 36 ¶ 1, which had been served in March. At a conference with the parties that same day, the Court warned that it

would entertain a motion for sanctions if Plaintiff and counsel failed to produce the documents. ECF No. 42 (July 15, 2022 Tr.) at 18:14–20.

Plaintiff and counsel did not comply with that order. Instead, just three days before the Court-ordered deadline, Mr. Isaacs filed a letter stating Plaintiff had "discharged" him and Mr. Gleason. ECF No. 38. This turned out to be a misrepresentation and a ploy by Mr. Isaacs and Mr. Gleason to avoid the consequences of their discovery failures. At the July 28, 2022 conference the Court convened to discuss the purported "discharge," Mr. Gleason admitted that they had not been discharged by Plaintiff. Rather, he and Mr. Isaacs tried to terminate their representation when, he said, Plaintiff would not allow them to review several boxes of documents. When the Court reminded Mr. Isaacs and Mr. Gleason they remained Plaintiff's counsel until the Court ordered otherwise, and they had violated the July 15 Order by failing to produce any additional documents, Mr. Isaacs and Mr. Gleason conferred privately with Plaintiff, who then dismissed the case with prejudice.

Ultimately, Defendant was subjected to almost a year of litigation—facing the most heinous allegations imaginable—in which Plaintiff's counsel engaged in a pattern of deliberate discovery misconduct and violations of this Court's rules and orders. These many discovery failures could have been avoided if Mr. Isaacs and Mr. Gleason had complied with their most basic obligations. They should have collected and reviewed Plaintiff's electronic communications and other documents before filing the Complaint—particularly given the alleged events took place in 1965. No reasonable attorney would have brought the case after reviewing the "evidence." But even putting this failure aside, they had *months* to collect these materials after Defendant served his First Set of Requests for Production in March 2022. If it is true, as they now state, that Plaintiff refused to hand over responsive documents, Mr. Isaacs and

3

Mr. Gleason should have brought the issue to the Court's attention in April, when the documents were due to be produced, not in July, after having violated a court order and when standing in the well of the courtroom. Their failure to do so required Defendant to spend numerous hours of attorney time chasing Mr. Isaacs and Mr. Gleason for discovery responses and writing letters to the Court, all the while complying with Defendant's own discovery obligations and preparing his defense. Even worse, Defendant was forced to conduct several depositions in the case (at considerable expense) with an incomplete document record, even though Plaintiff's counsel knew there were documents they were obligated to produce but had nonetheless withheld.

Mr. Isaacs and Mr. Gleason's conduct in this case is inexcusable. They refused to follow the rules, repeatedly violated the Court's orders—even under the threat of sanctions—and, then, in a desperate effort to avoid compliance, misrepresented to the Court they had been "discharged." Mr. Isaacs and Mr. Gleason should not be permitted to get away scot-free. Plaintiff's counsel's dishonest conduct and multiple violations of this Court's rules and orders warrant the imposition of sanctions under Rule 37(b)(2) in the amount of $50,000 as well as Defendant's fees and costs in bringing this motion.

## BACKGROUND

### A.   Mr. Isaacs and Mr. Gleason File the Complaint in Search of a Quick Payout

On August 13, 2021, Mr. Isaacs and Mr. Gleason filed the Complaint ("Compl."), Ex. A, alleging that "over a six-week period between April and May of 1965," Defendant "befriended and established an emotional connection with plaintiff, J.C., to lower her inhibitions with the object of sexually abusing her, which he did."[1] Compl. ¶ 1. The Complaint generated significant media coverage. Mr. Isaacs and Mr. Gleason surely knew it would, as Defendant is one of the

---

[1] Citations to "Ex. __" refer to exhibits to the Declaration of Brian Ascher, dated October 3, 2022, filed in support of this motion.

most famous public figures on the planet and, until this case, had never been accused of sexual misconduct by anyone.

After the initial round of press coverage, not a single other accuser stepped forward (nor has anyone in the time since).  Widely published reports cast serious doubt on the allegations. *See, e.g.*, Ex. B (Aug. 19, 2021 *Rolling Stone* Article reporting "[i]t is almost impossible to find one week—let alone six—that spring when Dylan could have been staying at the Chelsea Hotel," where the Complaint alleged the abuse occurred).  Nevertheless, Mr. Isaacs and Mr. Gleason persisted in seeking a multimillion-dollar payout from Defendant under threat of further negative publicity arising from the lawsuit.

Counsel for Defendant met with Mr. Isaacs in person twice to discuss the specifics of Plaintiff's story.  The "facts," as reported by Mr. Isaacs, were fantastical and obviously fabricated. After those two meetings, counsel for Defendant made clear to Mr. Isaacs that Defendant would never pay a cent to settle these false claims.  *See* Ex. C (Answer) at 1 ("Mr. Dylan will not be extorted.").

**B.      Mr. Isaacs and Mr. Gleason Attempt to Delay the Start of Discovery**

Defendant removed the action to this Court on January 12, 2022.  *See* ECF No. 1.  On February 9, 2022, the Court scheduled the Initial Pretrial Conference for March 18, 2022.  ECF No. 13 at 2.  Rule 26(f)(1) required the parties to meet and confer at least 21 days before that conference, which, in this case, meant no later than February 25, 2022.  The parties agreed to meet on February 23, but Mr. Isaacs cancelled the meeting just hours before.  Ex. D at 1.

On February 25, 2022, Mr. Gleason sent a letter to Gibson, Dunn & Crutcher's Managing Partner demanding the firm "withdraw immediately" from the representation of Defendant.  Ex. E at 1.  Mr. Gleason alleged in bad faith that Gibson Dunn was conflicted because 13 years prior, a Gibson Dunn partner uninvolved in this case had represented Mr. Gleason and nearly 30 other

individuals in a *pro bono* suit challenging the constitutionality of local term limits.  *Id.*  On March 1, 2022, Mr. Isaacs emailed counsel for Defendant stating that he would not meet and confer, as Rule 26 required, until after the resolution of a disqualification motion he intended to bring.  Ex. F.

On March 6, 2022, Mr. Gleason filed a pre-motion letter seeking to disqualify Gibson Dunn from the representation of Defendant.  ECF No. 15.  Defendant's counsel responded the next day.  ECF No. 17.  In addition to explaining why Mr. Gleason's disqualification effort was frivolous, defense counsel's letter also informed the Court that Mr. Isaacs and Mr. Gleason were using the pre-motion letter as a litigation tactic to avoid participating in a Rule 26 conference and thereby delay discovery.  *Id.* at 1.  On March 8, 2022, the Court directed the parties to be prepared to discuss the disqualification issue at the March 18 pretrial conference, and "remind[ed]" the parties "of their obligation to submit the materials described in the notice of initial pretrial conference on or before March 10, 2022."  ECF No. 18 at 4.

On notice that the Court would not tolerate any discovery delay based on their frivolous disqualification effort, Plaintiff's counsel finally emailed counsel for Defendant on March 10— the day the joint Case Management Plan and explanatory cover letter were due—to suggest the parties meet and confer, which defense counsel did, despite having already prepared the required documents without Mr. Isaacs' input.  Ex. G.  At the March 18, 2022 initial pretrial conference, the Court denied Mr. Gleason's request to bring a disqualification motion, noting that it had "not seen comparable cases where disqualification is predicated on prior representation of a party's *attorney*" (emphasis added), and that "[i]t is obvious . . . your prior experience with the Gibson, Dunn firm and this current case, they are in no way related."  ECF No. 23 (March 18, 2022 Tr.) at

4:22–5:2.  The disqualification effort and unilateral stay of discovery was only the first of

Mr. Isaacs and Mr. Gleason's many bad-faith discovery tactics.

### C.    Mr. Isaacs and Mr. Gleason Repeatedly Promise Discovery Responses, Grant Themselves Unilateral Extensions, and Still Fail to Deliver

At the March 18, 2022 preliminary conference, the Court stated it would endorse the

parties' Case Management Order, and directed the parties to "get started on your discovery,"

noting it is "not very interested in extending discovery deadlines."  *Id.* at 15:8–12.  With that

guidance in mind, Defendant served his First Set of Requests for Production and First Set of

Interrogatories that same day, with Plaintiff's responses due on April 18, 2022.  *See* ECF No. 25

at 1.  Mr. Isaacs and Mr. Gleason waited until the day Plaintiff's responses were due to request a

two-week extension, to Monday, May 2.  Ex. H.  As a courtesy, Defendant consented.  *See* ECF

No. 25 at 1.  On Thursday, April 28 2022, counsel for Defendant reached out to Mr. Isaacs to

confirm that Plaintiff's discovery responses would be sent on May 2.  *Id.*  Mr. Isaacs confirmed

that he would "have our initial responses . . . by Monday [May 2], also as promised."  *Id.*

Mr. Isaacs did not deliver the responses on May 2 "as promised."  As explained in

defense counsel's May 16, 2022 letter to the Court, for the next two weeks, Mr. Isaacs repeatedly

assured counsel he was "working away" and would serve responses "in the next day or two,"

only to fail to deliver and demand more time.  *Id.* at 1–2.  After more than half a dozen of these

unilateral extensions, it was obvious that Mr. Isaacs and Mr. Gleason would never provide the

discovery responses without court intervention.  Defense counsel wrote to the Court on May 16,

2022, nearly a month after the responses were due, to request the Court to direct Plaintiff's

compliance.  *Id.*

Mr. Isaacs filed a response on May 23, 2022, admitting he "had promised to provide

responses but failed to do so."  ECF No. 26.  Mr. Isaacs blamed this failure on competing

professional obligations and a trip he took to Ghana. *Id.* He stated without explanation that he required an *additional week*, until May 30, 2022 to provide the responses. *Id.* As early as May 2, 2022 Mr. Isaacs had been representing to Defendant that the responses were nearly complete and he only required one additional day. ECF No. 25 at 1–2.

On May 24, 2022, the Court ordered Plaintiff to serve responses to Defendant's initial interrogatories and requests for production by May 30, 2022 the date Mr. Isaacs had requested. ECF No. 27 at 2. The Order also "cautioned that future failures to meet the discovery deadlines set forth in the parties' case management plan or this Court's rules of individual practice will not be tolerated." *Id.* On May 30, 2022, Plaintiff served (deficient) responses to Defendant's First Set of Interrogatories, but failed to provide responses to Defendant's First Requests for Production. *See* ECF No. 28 at 1–2. Defendant wrote the Court the next day, May 31, 2022, to request a discovery conference regarding the missing responses. *Id.* Plaintiff finally provided (deficient) responses to Defendant's Requests for Production later that day, so Defendant withdrew his request for a conference. *See* ECF No. 29. Even so, the Court issued an order warning that if "Plaintiff continues to neglect her responsibilities in this case, the Court will take appropriate action at that time."[2] ECF No. 30 at 2.

In addition to being late, Plaintiff's discovery responses also contained numerous substantive deficiencies. Defendant first sought to resolve these deficiencies directly with Mr. Isaacs and Mr. Gleason, and on June 8, 2022, wrote a letter with a detailed explanation regarding how to bring the responses into compliance. Ex. K. Further, Mr. Isaacs and

---

[2] Plaintiff's counsel's obstruction and refusal to comply with the rules continued when it came to providing HIPAA authorizations. As Defendant informed the Court on May 16, 2022, defense counsel reached out to Mr. Isaacs on April 28, 2022 to inquire about Plaintiff's HIPAA authorizations, which were due on April 18. *See* ECF No. 25 at 1. While Mr. Isaacs eventually provided a subset of the owed HIPAA authorizations on May 3, Ex. I, several more were missing, and at least four of the provided authorizations contained incorrect or incomplete information such that Defendant was unable to actually serve subpoenas. *See* Ex. J.

Mr. Gleason still had not given any indication of when they would actually produce Plaintiff's documents, despite Defendant's Requests for Production having been served three months prior. Defendant, on the other hand, had conducted an extensive review of his archives and produced essentially every document, photograph, and scrap of paper dating to spring 1965 or otherwise related to issues Plaintiff had raised.  Defendant had also, on June 1, 2022, produced approximately 60 relevant emails to and from Plaintiff, which he had obtained via third-party subpoenas.  *See* ECF No. 44 at 1.

At Defendant's request, the parties met and conferred on June 16, 2022 regarding the interrogatory deficiencies, missing or incomplete HIPAA authorizations, and missing documents. *See* Ex. L.  At the meet-and-confer, Mr. Isaacs agreed to (generous) continued deadlines for Plaintiff's outstanding discovery obligations, the most crucial of which being that Plaintiff would produce substantially all documents responsive to Defendant's First Set of Requests for Production—which were served in March—by June 30, 2022.  *Id.* at 1.

**D.    Mr. Isaacs and Mr. Gleason Fail to Produce Documents and the Court Again Orders Them to Comply with Their Discovery Obligations**

Mr. Isaacs and Mr. Gleason did not meet the June 30 document production deadline.  As Defendant informed the Court on July 1, 2022, Mr. Isaacs and Mr. Gleason sent a single PDF containing a paltry 49 pages of materials.  ECF No. 33 at 2.  Many of the pages were cut off or illegible as a result of being carelessly scanned by counsel.  Because the pages were not Bates-stamped or otherwise marked, it was impossible to tell where one document ended and another began.  The PDF itself consisted of several incoherent letters Plaintiff had written to various publications, entertainment executives, and even a U.S. senator regarding Defendant, the poet Allen Ginsberg, Elvis Presley, and other popular figures.

Our July 1, 2022 letter to the Court stated that no reasonable attorney could have brought the case based on these materials, which raised serious concerns about Plaintiff's competency and cast further doubt on the veracity of her claims. *Id.* at 2–3. But what was missing from the document production raised even more serious concerns. It did not include *any* emails, text messages, or other electronic communications—not even one of the many emails to and from Plaintiff that Defendant acquired from third parties and provided to Plaintiff a full month earlier, on June 1, 2022. *Id.* at 2. We believed, and Mr. Isaacs later confirmed, that the omission indicated Mr. Isaacs and Mr. Gleason had never collected or reviewed Plaintiff's emails or text messages, despite being on notice for months—since *March 18, 2022*—that Defendant was demanding relevant electronic communications. *See* ECF No. 42 (July 15, 2022 Tr.) at 15:3 (MR. ISAACS: . . . "My client only provided me with a couple of emails."). We promptly requested a conference with the Court, which took place on July 15, 2022. *See* ECF No. 33.

Mr. Isaacs and Mr. Gleason never objected to Defendant's request for, or disputed the relevance of, Plaintiff's electronic communications. Nor could they. In the limited set of electronic communications Defendant received from third parties, Plaintiff directly and extensively discussed her specific factual allegations and their plausibility, and made a series of contradictory explanations for the obvious impossibilities in her story. But at the July 15, 2022 conference, Mr. Isaacs blamed counsel's failure to collect, review, or produce Plaintiff's communications on the fact that he is "a solo practitioner" and was busy with a trial earlier in the year. ECF No. 42 (July 15, 2022 Tr.) at 14:22–15:2. Mr. Isaacs did not explain why Mr. Gleason, his co-counsel, was unable to handle the document collection, or why his trial justified a *four-month* delay in even *collecting* Plaintiff's electronic communications. As the Court reminded him, "[i]f you believed that you needed more time because of the specifics of

your practice, that's something you should have told me about some time ago."[3]  *Id.* at 17:24–18:1.

Mr. Isaacs and Mr. Gleason also demonstrated a lack of candor at the July 15, 2022 conference.  Mr. Isaacs spoke first and represented that "once I give them these last few text messages, which I just received, we have nothing other, at this point, to provide."  *Id.* at 4:7–9. Defense counsel then explained that Defendant had taken a deposition the day before, on July 14, 2022, and Mr. Isaacs "with his own eyes, saw—because I offered into evidence—dozens of emails with his client.  So how he can tell this Court right now in a representation that there are one or two . . . is of concern."  *Id.* at 13:24–14:5.  The Court then asked Mr. Isaacs, "[h]ow are you comfortable representing to me this morning that your client gave you a couple [communications] that you will be producing, knowing that there were these others out there?" *Id.* at 15:23–16:2.  Mr. Isaacs dissembled, stating that Plaintiff "has a lot of emotional issues," and promising to "personally go there, go through every single email," but did not explain his obvious misrepresentation minutes earlier that only a "few text messages" remained to be produced.  *Id.* at 16:6–16.

The Court invited Defendant to submit a draft order proposing firm production deadlines, and provided a stern warning:

> The problem that I have is, at some point, I actually have to abide by the written warnings that I give, and so I've tried, as hard as I can, to give you latitude and space to work out these discovery issues, but at some point, I'm just going to come to believe that you are not abiding by my orders or that your client is incapable of providing truthful responses to discovery issues.  And that will be a problem, and you have to know that that's the case.  I don't know how to tell you that there is a line that you're about to cross, but I am saying — and I think this is something I'm comfortable saying right now — if it turns out that you start producing things after

---

[3] As defense counsel informed the Court at the July 28, 2022 conference, Mr. Isaacs and Mr. Gleason's inexcusable contention that they did not have time to meet their obligations in this action is further undermined by the fact that Mr. Gleason was actively running for congress, and Mr. Isaacs was apparently exploring a run for public office himself.  *See* July 28, 2022 Tr. 25:18–23; ECF No. 34 at 1.

the 22nd of July, or you start producing things beyond the 15th of August, I absolutely am going to entertain sanctions motions because I think it's ridiculous.

*Id.* at 18:6–20.  The Court entered the July 15 Order that day directing Plaintiff to produce all documents responsive to Defendant's First Requests for Production—which had been served four months prior—by July 22, 2022.  ECF No. 36 ¶ 1.

### E.  Under Threat of Sanctions, Mr. Isaacs and Mr. Gleason Misrepresent That Plaintiff "Discharged" Them Three Days Before the July 22 Deadline

On July 19, 2022, just three days before the document production deadline set by the Court, and facing the threat of sanctions, Mr. Isaacs filed a letter with the Court stating that, "I, together with my co-counsel, Peter J. Gleason, have been discharged by the Plaintiff as her attorneys in the above referenced matter."  ECF No. 38.  Defense counsel wrote the Court the next day, noting that Mr. Isaacs' letter was alarming for multiple reasons.  ECF No. 39.  First, it did not comply with the requirements for withdrawal under the Court's Local Rules.  Second, and most importantly, "[t]he timing of counsel's letter, coming on the heels of last Friday's conference, . . . appears designed to evade Court-ordered document production obligations and the threat of sanctions."  *Id.* at 1.  The Court promptly set an in-person conference for the following week, July 28, 2022.  ECF No. 41.  Meanwhile, the July 22, 2022 document production deadline passed without a single additional document being produced, and with Mr. Isaacs and Mr. Gleason remaining counsel of record (despite their effort to exit the case).

### F.  Plaintiff Dismisses the Action After Mr. Gleason Admits Plaintiff Did Not Voluntarily Discharge Counsel and Counsel Never Collected or Reviewed Thousands of Pages of Documents

At the July 28, 2022 conference, the Court confirmed that Mr. Isaacs and Mr. Gleason remained counsel of record.  July 28, 2022 Tr. at 2:21–22 ("From my perspective, there wasn't a

12

discharge from me.").[4]  The Court also stated that "it wasn't quite clear to me that the obligations

and the deadlines, to which you agreed, were now suddenly by the boards," and that the Court

did not "like feeling as though I am being played."  *Id.* at 2:24–3:1.

Despite only ever producing 49 pages of largely incomprehensible letters apparently

authored by Plaintiff, Mr. Isaacs represented at the conference that "before the commencement

of this action" he had "asked repeatedly to be provided both documents and information so I

could review it, in addition to doing my own research."  *Id.* at 3:21–24.  This claim is flatly

contradicted by Mr. Isaacs' admission that he and Mr. Gleason waited until July 18, 2022, the

Monday after the July 15 Order, to travel to Plaintiff's residence and finally, four months after

Defendant served his Requests for Production, review his client's computer and discuss with her

how to comply with Defendant's requests.  *Id.* at 5:15–24.

Mr. Gleason spoke at the July 28 conference next, claiming he returned to Plaintiff's

residence to collect the documents on July 19, 2022, but Plaintiff instead handed him "a paper

file" containing only "a few documents."  *Id.* at 7:2–7.  Mr. Gleason stated he told Plaintiff he

knew there must be more documents, as Defendant had produced "a large amount of emails that

[Plaintiff] shared with [her] sister," at which point Plaintiff apparently "pointed to . . . three

boxes on the floor."  *Id.* at 7:6–9.  Mr. Gleason said each of these boxes appeared to contain

approximately 500 pages of material, which Plaintiff told him she had "kept regarding the Dylan

matter."  *Id.* at 7:10–16.

According to Mr. Gleason, Plaintiff would not turn over the documents because "she

would be embarrassed of the contents."  *Id.* at 8:1–2.  Mr. Gleason said he told Plaintiff at that

---

[4] The Court sealed the transcript of July 28, 2022, after Mr. Gleason repeatedly identified Plaintiff, who filed the Complaint anonymously, by her legal name.  July 28, 2022 Tr. 11:19.  Defendant is therefore omitting the transcript as an exhibit to the Ascher Declaration, and is not citing in this brief any portions of the transcript containing Plaintiff's personally identifying information.

point, "you have two choices.  Either Mr. Isaacs and myself are going to make a motion to the Court to withdraw as your counsel, because you're not cooperating with us, or B, you can terminate our services."  *Id.* at 8:25–9:3.  To state the obvious, these are not real choices. Mr. Gleason admitted Plaintiff did not choose to "discharge" counsel, and the representation Mr. Isaacs made in his July 19, 2022 letter to the Court was false.  In reality, the supposed "discharge" was, according to Mr. Gleason, a result of counsel's inability to meet the production obligations set forth in the Court's July 15 Order, ECF No. 36, which they had agreed to just days prior.  Mr. Gleason's statements to the Court leave no room for doubt:  Mr. Isaacs and Mr. Gleason violated their duty of candor to the Court, misrepresenting their "discharge" in the hope they could yet again evade their discovery obligations, and avoid consequences for their many failures to comply with the Court's Orders (ECF Nos. 27, 30, 35).

After conferring with Mr. Isaacs and Mr. Gleason during a recess, Plaintiff decided to dismiss the action with prejudice.  July 28, 2022 Tr. at 35:11–25.  The Court acknowledged the dismissal "may not moot all of the issues" and invited Defendant to "let me know if there's anything left for me to do."  *Id.* at 36:6–15.  In consideration of the Court's statement at the July 15, 2022 conference that if counsel again shirked their discovery obligations, it would "absolutely entertain sanctions motions because I think it's ridiculous," ECF No. 42 (July 15, 2022 Tr.) at 18:18–20, Defendant filed a letter on August 4, 2022 seeking permission to file a motion for sanctions against Mr. Isaacs and Mr. Gleason under Rule 37(b)(2).  ECF No. 45.  On August 8, 2022, the Court granted permission to bring the instant motion.  ECF No. 46.

## LEGAL STANDARD

Rule 37 sets out procedures for enforcing discovery obligations and sanctioning misconduct.  Rule 37(b) authorizes sanctions against a party that "fails to obey an order to

14

provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). "The only predicates to the imposition of sanctions" are "a court order directing compliance with discovery requests," and "non-compliance with that order." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 4760345, at *6 (S.D.N.Y. Sept. 28, 2018). An "evasive or incomplete disclosure, answer, or response [is] . . . treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). When determining the appropriate sanction, courts weigh several factors, including: "(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party had been warned that noncompliance would be sanctioned." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013). Compensation for fees is an appropriate remedy under Rule 37(b), including fees incurred as a result of counsel's discovery failures preceding the specific violation of the order of the Court. *Auscape Intern. v. Nat'l Geographic Soc'y*, 2003 WL 21976400, at *6 (S.D.N.Y. Aug 19, 2003).

## ARGUMENT

### A.   Mr. Isaacs and Mr. Gleason Should Be Sanctioned under Rule 37(b)(2) for Their Willful and Continuous Discovery Violations

"Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order." *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991). The Court's July 15, 2022 Order could not have been clearer. It required that "Plaintiff will produce all documents responsive to Defendant's First Set of Requests for Production on or before July 22, 2022." ECF No. 35 ¶ 1. Plaintiff and counsel violated the Order when they failed to produce a single additional document. "Despite several warnings, [counsel] continued to disregard the discovery process and disobey the Court's Orders." *In re Thilman*, 548 B.R. 1, 8 (Bankr.

E.D.N.Y. 2016).  Mr. Isaacs and Mr. Gleason did not, for example, produce the documents Mr. Gleason stated Plaintiff had offered to provide him.  *See* July 28, 2022 Tr. at 7:2–5 ("When I visited the plaintiff at her residence, she had a paper file, which she handed me . . . .  There were a few documents in there").  Nor did Mr. Isaacs and Mr. Gleason alert the Court or Defendant to the fact that Plaintiff had over a thousand pages of supposedly relevant documents that she refused to produce.  Instead, Mr. Isaacs and Mr. Gleason sought to exit the case and avoid punishment, misrepresenting to the Court that they had been "discharged."  *See supra* at 14.

Mr. Isaacs and Mr. Gleason's unsuccessful attempt to unilaterally exit the litigation ahead of the Court-ordered July 22, 2022 production deadline did not relieve them of their obligations under the Court's July 15 Order, ECF No. 35, or the Court's prior orders directing them to comply with discovery deadlines, ECF Nos. 27, 30, which they violated when they failed to produce any additional documents.  Mr. Isaacs' July 19 letter, ECF No. 38, did not comply with Local Civil Rule 1.4, which requires the withdrawing attorney demonstrate a satisfactory reason for withdrawal and be granted leave by the court.  As the Court reminded Mr. Isaacs and Mr. Gleason at the July 28 conference, "[f]rom my perspective, there wasn't a discharge from me," and they remained Plaintiff's counsel.  July 28, 2022 Tr. at 2:21–22.  The Court also recognized Mr. Isaacs and Mr. Gleason's violation of the "obligations and deadlines, to which [they] agreed," in the July 15 Order, which was not "suddenly by the boards."  *Id.* at 2:24–3:1.

Rule 37(b) permits the Court to hold "counsel personally liable for expenses" for "failure to comply with discovery orders."  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 753 (1980).  Courts have sanctioned counsel personally for the exact conduct at issue here:  failing to adequately supervise document production, resulting in the failure to produce documents.  In *Metropolitan Opera Association, Inc. v. Local 100, Hotel Employees and Restaurant Employees*

*International Union*, for example, the court sanctioned counsel for failing to produce documents against the backdrop of a pattern of discovery misconduct by counsel that is very similar to what occurred here:

> Certainly when counsel learned that their client[] . . . had not understood that e-mails were called for and had not retained electronic documents or drafts, they should have had 'reason to question' the completeness of defendants' productions (and the adequacy of their own supervision) . . . . Yet counsel persisted in ignoring, indeed belittling, the [opposing counsel's] inquiries concerning the patent lack of production of e-mails, computer files and drafts until . . . I told them . . . that their failure to search for and to have instructed their clients to save computer-generated documents was inexcusable and directed them to inquire of their clients and to comply with their discovery obligations forthwith. Even then, counsel's disregard for their obligations continued . . . .

212 F.R.D. 178, 223 (S.D.N.Y. 2003).

Here, as in *Metropolitan Opera Association*, "[t]here can be no doubt that counsel's repeated representations that all responsive documents had been produced were not the result of a reasonable inquiry, that counsel failed to stop and think about their responses, and that counsel did not engage in discovery responsibly." *Id.* at 224.

Plaintiff's counsel's conduct is particularly egregious because they made repeated false representations regarding the completeness of their production. After making a woefully insufficient production of documents—which they did only after Defendant sought Court intervention to force them to respond to long-pending discovery requests—counsel misrepresented to the Court that only a "last few text messages" remained to be produced. ECF No. 42 (July 15, 2022 Tr.) at 4:7–9. Counsel made this misrepresentation despite being aware of dozens of responsive and highly relevant emails Plaintiff had never produced, *supra* at 10–11, and despite the fact that counsel had never actually searched Plaintiff's electronic devices. *See* ECF No. 42 (July 15, 2022 Tr.) at 15:3–5 ("My client only provided me with a couple of emails. What I'm going to be doing is I'm going to take that computer, and I'm going to go through it

17

with her . . . .").  Even counsel's belated promise—made four months after Defendant served document requests and nearly a year into the litigation—to finally search Plaintiff's devices and produce documents went unfulfilled, in violation of the Court's July 15 Order, ECF No. 35 ¶ 1. "[A]ttorneys owe an ethical duty of candor in all of their dealings with the Court." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 118 (S.D.N.Y. 2018). Neither Mr. Isaacs' representation that Plaintiff's production was essentially complete nor his representation that he and Mr. Gleason had been "discharged" when they again failed to produce documents met that duty.

Where, as here, counsel "has repeatedly failed to comply with this Court's directives," it is appropriate that they be sanctioned under Rule 37(b).  *DeCastro v. Kavadia*, 309 F.R.D. 167, 185 (S.D.N.Y. 2015); *Worldcom Network Servs., Inc. v. Metro Access, Inc.*, 205 F.R.D. 136, 142 (S.D.N.Y. 2002) (sanctioning counsel under Rule 37(b) where "evidence suggests that the failure to comply with the [] order was either willful or represented a cavalier attitude with respect to the Court's deadlines").

**B.    Second Circuit Precedent Supports Significant Penalties Against Mr. Isaacs and Mr. Gleason**

Under Second Circuit authority, four factors are considered in determining the propriety of sanctions:  "(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party had been warned that noncompliance would be sanctioned." *Guggenheim Cap.*, 722 F.3d at 451.  Each factor overwhelmingly weighs in favor of holding Mr. Isaacs and Mr. Gleason personally accountable for some portion of the costs and fees Defendant incurred as a result of their misconduct.

**1.    Factor 1:  Mr. Isaacs and Mr. Gleason's Non-Compliance with Discovery Obligations Was "Willful"**

"Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *In re Fosamax Prod. Liab. Litig.*, 2013 WL 1176061, at *2 (S.D.N.Y. Mar. 21, 2013). "It is particularly important to consider a party's course of conduct throughout the litigation when evaluating willfulness," *Martinez v. City of New York*, 2018 WL 604019, at *23 (E.D.N.Y. Jan. 24, 2018), as "[t]aken out of context, perhaps, any individual incident of discovery misconduct may appear forgivable—especially when framed by some post hoc excuse that rings of reasonableness," *Local Union No. 40 of the Int'l Ass'n of Bridge v. Car-Wi Constr.*, 88 F. Supp. 3d 250, 264 (S.D.N.Y. 2015). *See generally Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("sanctions must be weighed in light of the full record in the case").

There is no question the Court's order to produce responsive documents by July 22, 2022 was clear and understood by Plaintiff's counsel. At the July 28, 2022 conference, Mr. Isaacs said he did not "disagree with the frustration of defendant's counsel in terms of getting production of documents. I agree with them. They have every right to them." July 28, 2022 Tr. at 30:11–14. Mr. Isaacs also stated:

> As the Court knows from our procedural history, when we did our initial response, we were given letters of deficiency with respect to production of documents and interrogatories, and I went back to our client and went over them repeatedly with her, asking her for information. We supplied supplemental interrogatory responses. I asked for additional documents. Again, as an officer of this court for 30 years, I know our obligations.

*Id.* at 30:16–23.

There is also no doubt the many discovery failures here were the fault of Plaintiff's counsel and not attributable to factors outside of their control. Despite Mr. Isaacs' last-ditch effort to shift blame to his client, nothing about Plaintiff's conduct explains away Mr. Isaacs' and

Mr. Gleason's months-long campaign of evasion designed to avoid providing discovery responses and producing documents. Mr. Isaacs and Mr. Gleason first tried to delay discovery with a frivolous disqualification motion. Once discovery was underway, they consistently failed to timely respond to duly served discovery requests. These routine failures were willful.

For example, responses to Defendant's First Set of Requests for Production and First Set of Interrogatories were due on April 18, 2022. On that date, Mr. Isaacs and Mr. Gleason requested a two-week extension, to May 2, 2022, only to blow past that deadline (despite assurances the Thursday before that it would be met) by several weeks. In fact, they only served responses to Defendant's First Set of Interrogatories and Defendant's First Set of Requests for Production on May 30 and 31, 2022—over two months late—*after* Defendant was forced to seek judicial intervention. Plaintiff's counsel was also severely late in serving numerous HIPAA authorizations Defendant needed to subpoena key witnesses.

Plaintiff's counsel's misconduct concerning the production of documents (or lack thereof) was even more egregious and prejudicial. When Mr. Isaacs and Mr. Gleason finally produced documents on June 30, 2022—the date by which they agreed to produce substantially *all* Plaintiff's documents—they produced just a single 49-page PDF, without separating individual documents and with many pages cut off and rendered illegible apparently as a result of counsel's own careless scanning. The deficient production did not include a single email— even though Plaintiff's counsel had known for at least a month that dozens of responsive emails authored or received by Plaintiff existed, since Defendant himself produced email communications he had acquired between Plaintiff and third parties.[5] Throughout this time,

---

[5] When challenged on the absence of emails from their production, Plaintiff's counsel falsely represented to the Court that they were only aware of "a couple of emails." *See* EFC No. 42 (July 15, 2022 Tr.) at 15:3. This was patently false as they were already in possession at that time of approximately 60 emails that had been produced by third parties.

Defendant spent hundreds of hours of attorney time complying with his discovery obligations, deposing four key witnesses, and preparing his defense. Mr. Isaacs' and Mr. Gleason's "long history of obstruction of discovery" in this case is relevant in assessing the propriety of sanctions here. *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 390 (2d Cir. 1981).

Mr. Isaacs and Mr. Gleason are directly responsible for this pattern of serious discovery misconduct, and any effort to blame their client should be rejected. At the last two hearings with the Court, counsel sought to blame Plaintiff's alleged "emotional issues" and "PTSD" for their myriad discovery failures, including their failure to produce documents and their violation of the July 15 Order. ECF No. 42 (July 15, 2022 Tr.) at 16:8–13; July 28, 2022 Tr. 8:6–9. Yet counsel admit they relied entirely on Plaintiff to provide them with all the responsive documents, rather than inspecting her devices or documents themselves.[6] ECF No. 42 (July 15, 2022 Tr.) at 6:18–21 ("I followed up with do you have extra emails, and she says I'm going to look, and got back. She has some texts, a couple emails, but not much, and I will send them."). They inexplicably continued to rely on Plaintiff to compile a complete document production herself even after they became aware she had failed to provide them dozens of responsive emails she exchanged with third parties. *See supra* at 10–11. "[S]uch a failure by [counsel] in the face of [Defense] counsel's constant complaints of no adequate search and demonstrations of inadequate production rises far above carelessness to willfulness." *Metro. Opera Ass'n*, 212 F.R.D. at 215.

Nor can Counsel's discovery failures be excused by their competing obligations in other matters. Mr. Isaacs repeatedly blamed his status as a "solo practitioner" and deadlines or commitments in other cases for the discovery failures here. *See* ECF No. 42 (July 15, 2022 Tr.)

---

[6] As we informed the Court on July 27, 2022, ECF No. 44, Mr. Isaacs and Mr. Gleason apparently failed to take any steps to preserve Plaintiff's electronic documents and communications, as required, which resulted in spoliation. A key witness testified Plaintiff admitted to him that she had deleted relevant text messages. *See id.*

at 14:22–15:2.  This excuse makes no sense in light of Mr. Gleason's role as co-counsel.

Regardless, "[t]he Court [should] not accept this as an excuse for disregarding the orders of the

Court."  *Copeland v. Rosen*, 194 F.R.D. 127, 134 (S.D.N.Y. 2000) (imposing sanctions where

attorney "frequently blamed her 'inability' to comply with court orders on the fact that she is a

sole practitioner and is very busy").  "It should go without saying that [counsel] should not take

on more clients than she can effectively represent."  *Id.*  Mr. Isaacs and Mr. Gleason should not

have brought this action—accusing Defendant of heinous conduct—if they had not reviewed any

of the relevant documents and did not have time to litigate the case.  "No attorney, from the

largest law firm to the sole practitioner, is permitted to practice law in this fashion."  *Id.*

### 2.   Factor 2:  Monetary Sanctions Are the "Mildest" Sanction for Discovery Misconduct

The "'mildest'" sanction for discovery misconduct "'is an order to reimburse the

opposing party for expenses caused by the failure to cooperate.'"  *Seena Int'l, Inc. v. One Step

Up, Ltd.*, 2016 WL 2865350, at *11 (S.D.N.Y. May 11, 2016) (quoting *Cine Forty–Second St.

Theatre Corp.*, 602 F.2d at 1066).  Plaintiff "must therefore pay [Defendant's] reasonable fees

and costs necessarily incurred . . . to obtain the document discovery to which [he is] entitled,"

including costs incurred in bringing the motion for sanctions.  *Id.* at *11–12.  Here, rather than

seek the full amount of fees and costs incurred by Defendant as a direct result of Plaintiff's

counsel's discovery misconduct, Defendant seeks only $50,000.  It is Defendant's hope that this

award is sufficient to deter Mr. Isaacs and Mr. Gleason from putting another litigation adversary

through the months of frustration and expense Defendant endured as a result of their obvious

derelictions of duty in this action.

In addition, Defendant seeks the fees incurred in bringing this motion for sanctions—"the minimum sanction contemplated by Rule 37 in cases where there has been a failure to comply with a court-ordered discovery obligation." *Worldcom Network Servs.*, 205 F.R.D. at 143.

### 3.   Factors 3 and 4:  Mr. Isaacs and Mr. Gleason's Misconduct Lasted for Several Months and They Failed to Comply with Their Discovery Obligations Despite Several Warnings

Mr. Isaacs and Mr. Gleason were warned by the Court many times that they would face consequences for their repeated violations of their discovery obligations. *See* ECF No. 27 at 2 ("caution[ing] that future failures to meet the discovery deadlines set forth in the parties' case management plan or this Court's rules of individual practice will not be tolerated"); ECF No. 30 at 2 ("If [] Plaintiff continues to neglect her responsibilities in this case, the Court will take appropriate action at that time."); ECF No. 42 (July 15, 2022 Tr.) at 18:18–20 ("I absolutely am going to entertain sanctions motions because I think it's ridiculous."). While warnings are not "an absolute condition precedent" to sanctions, *Daval Steel Prods.*, 951 F.2d at 1366, "ample warnings" may, as here, "demonstrate[] the 'justice' of the trial court's order" imposing sanctions. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 708 (1982).

The Court's warnings were, of course, only necessary due to Mr. Isaacs' and Mr. Gleason's continued pattern of discovery misconduct, which began when they attempted to delay discovery altogether by refusing their Rule 26 obligation to meet and confer with defense counsel at the outset of the litigation. *See supra* at 5–6. The violations continued virtually without exception as to every other discovery obligation and deadline preceding the termination of this lawsuit. As such, factors three and four—"the duration of the noncompliance" and "whether the non-compliant party had been warned that noncompliance would be sanctioned"— clearly weigh in favor of heavy penalties. *Penthouse Int'l, Ltd.*, 663 F.2d at 390 (holding it was

appropriate for the trial court to consider a party's "long history of obstruction of discovery" in weighing Rule 37 sanctions for violation of a court order); *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 708 (affirming sanctions award where "fail[ure] to comply with the discovery order . . . coupled with the ample warnings, demonstrates the 'justice' of the trial court's order").

## C.      The Dismissal of the Action with Prejudice Does Not Lessen the Need for Sanctions

"That plaintiff[] subsequently moved to dismiss [her] claims voluntarily cannot post hoc excuse their discovery failures or otherwise lessen the need to impose Rule 37 sanctions." *Quadrozzi v. City of New York*, 127 F.R.D. 63, 77 (S.D.N.Y. 1989). In such circumstances, "a Rule 37 sanctions award is not unjust because such claims pertain to discovery expenses already and unjustifiably incurred." *Id.* at 77–78. Further, "even though the claims . . . have now been dismissed, imposition of [Rule 37] sanctions in this case is permissible to deter further non-compliance from other parties and non-parties in this case, and parties in other cases more generally." *City of Almaty, Kazakhstan v. Ablyazov*, 2020 WL 5269554, at *4 (S.D.N.Y. Sept. 3, 2020). Defendant will never be made financially whole for the expenses he incurred as a result of Mr. Isaacs' and Mr. Gleason's discovery violations (not to mention the reputational harm of this meritless lawsuit filed apparently without any pre-suit investigation). Nor does Defendant seek such an award, which would run into the many hundreds of thousands of dollars. Instead, a sanctions award sufficient to deter Plaintiff's counsel's future misconduct in other actions—such as the modest award requested here—is fully justified. A sanctions award here would also serve to deter other litigants from disobeying court orders and ignoring valid discovery requests. *See Nat'l Hockley League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (sanctions are necessary to deter "other parties to other lawsuits" from flouting "other discovery orders of other district courts").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should award Defendant sanctions against Mr. Isaacs

and Mr. Gleason in the amount of $50,000, plus fees incurred in bringing this motion.

Dated:   October 3, 2022                            Respectfully submitted,
        New York, NY                              GIBSON, DUNN & CRUTCHER LLP


                                By:  _/s/ Orin Snyder_____
                                     Orin Snyder
                                     Brian Ascher
                                     Greta Williams
                                     Jeremy Bunting
                                     Alexandra Perloff-Giles
                                     OSnyder@gibsondunn.com
                                     BAscher@gibsondunn.com
                                     GBWilliams@gibsondunn.com
                                     JBunting@gibsondunn.com
                                     APerloff-Giles@gibsondunn.com
                                     200 Park Avenue
                                     New York, NY 10166-0193
                                     Telephone:  212.351.4000

                                     Andrea Schillaci
                                     Hurwitz & Fine, P.C.
                                     AS@hurwitzfine.com
                                     1300 Liberty Building
                                     Buffalo, NY 14202
                                     Telephone: 716.849.8900

                                     *Attorneys for Defendant*