UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

J.C.,                                          22 Civ. 323 (KPF)

                              Plaintiff,

            - against -


ROBERT ALLEN ZIMMERMAN a/k/a
BOB DYLAN,

                              Defendant.

-------------------------------------------------------x


## MEMORNDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S RULE 37 MOTION
## AND IN SUPPORT OF CROSS-MOTION TO WITHDRAW AS PLAINTIFF'S COUNSEL

Nathaniel B. Smith
225 Broadway – Suite 1901
New York, New York 10007
212-227-7062
natbsmith@gmail.com

Dated: November 18, 2022

## TABLE OF CONTENTS

Preliminary Statement ........................................................ 5

Statement of Relevant Facts ............................................. 5

   1. The Commencement of this Action and the Identification of the
      Plaintiff in the Media ................................................ 5

   2. The Commencement of Discovery ...................................... 7

   3.  The July 15th Order ................................................ 8

   4. The Dismissal of the Action ........................................ 10

   5. The Motion for Sanctions and the Cross-Motion ................ 13

The Rule 37(b) Standard ................................................... 15

Argument ......................................................................... 17

1. Plaintiff's Counsel Did Not Violate the Court's July 15th Order ............ 19

2. The Procedural History of this Case and Its Impact on Plaintiff
Show That Sanctions Are Not Appropriate ................................... 22

3.  Defendant Has Failed to Show Any Causal Connection Between
the July 15th Order and the $50,000 in Legal Fees He Demands ............... 23

4.  Before Any Sanction Is Imposed The Court Should
Conduct a Hearing ......................................................... 25

Conclusion ...................................................................... 26

TABLE OF AUTHORITIES

**Cases**

*Bolger v. District of Columbia*, 248 F. R.D. 339 (D.D.C. 2008)................. 18

*Cobell v. Babbit*, 188 F. R.D. 122 (D.D.C. 1999) ............................... 24

*Commerce & Indus. v. Newhall Contracting, Inc.*, 2:13-cv-30260
  (S.D. Va. Sept. 29, 2015)................................................... 22

*Daval Steel Prod. v. M/V Fakredine,* 951 F. 2d 1357 (2d Cir. 1991)........... 16

*Flaks v. Koegel*, 504 F. 2d 702 (2d Cir. 1974) .............................. 25

*Friedgood v. Axelrod,* 593 F. Supp. 395 (S.D.N.Y. 1984)…………………14

*Guggenheim Capital LLC v. Birnbaum,* 722 F. 3d 444 (2d Cir. 2013)........ 16

*In re Yellen Herstic*, 804 F. 2d 191 (2d Cir. 1986)........................... 19, 21,25

*Kiobel v. Millson*, 592 F. 3d 78 (2d Cir. 2010)…..…………………………14

*Marin v Brown,* 63 F. 3d 1252 (3d Cir. 1995).............................. 19

*Myer's Lawn Care Serv. v. Fragale,* 8-19-75714-reg
  (Bankr. E.D.N.Y. Sept. 22, 2022)........................................... 21

*National Hockey League v. Metropolitan Hockey Club, Inc.*,
  427 U. S. 639 (1976) ..................................................... 16

*Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc.,*
  339 F. 3d 180 (3d Cir. 2003))............................................. 18

*People v. Spicola*, 16 N.Y.3d 441 (2011)..................................... 11

*Quadrizzi v. City of New York*, 127 F. R.D. 63 (S.D.N.Y. 1989)................ 15

*Schoenberg v. Shapolsky*, 971 F. 2d 926 (2d Cir. 1992) ...................... 18

*State v. J.L.G.,* 234 N.J. 265 (2018) ...................................... 11

*Turnbull v. Wilcken,* 893 F. 3d 256 (10th Cir. 1990) ................................... 24

*Westmoreland v. CBS, Inc.*, 770 F. 2d 1168 (D.C. Cir. 1985)..................... 24

*Witherspoon v. Ridinger,* 03-cv-5462 (JBS) (D.N.J. July 20, 2005)……….21

**Other Authorities**

*Moore's Federal Practice,* 3d § 37.23[4][a] ............................................... 18

Moore's *Federal Practice* 3d § 37.51[9][d]………………………………..24

Roland C. Summit, M.D., *The Child Sexual Abuse Accommodation Syndrome,* 7 Child Abuse and Neglect 177-93 (1983) (available at https://cape.sccgov.org/sites/g/files/exjcpb1061/files/document) ............ 11

*Preliminary Statement*

The attorneys for the plaintiff in this action, Daniel W. Isaacs and Peter J. Gleason (collectively "Plaintiff's counsel"), respectfully submit this memorandum of law in opposition to the Defendant's motion for sanctions against them under Rule 37(b) of the Federal Rules of Civil Procedure. In addition, Plaintiff's counsel submit this memorandum of law in support of their motion to withdraw under Local Rule 1.4 as the attorneys of record for the Plaintiff.

*Statement of Relevant Facts*

*1. The Commencement of this Action and the Identification of the Plaintiff in the Media*

Plaintiff commenced this action on August 13, 2021 by the filing of the Summons and Complaint in the New York State Supreme Court for the County of New York. (*See* ECF Docket ("Dkt") # 1-1.) About two months later, but before the Defendant appeared, on December 27, 2021, Plaintiff filed an Amended Complaint. (Dkt. 1-10.)

In brief, Plaintiff alleged that in 1965 Defendant used his position as a famous and powerful man to take advantage of Plaintiff sexually when she was a twelve-year-old girl. (*Id.* ¶¶ 9-12.) Although the claims in the Amended Complaint were based on conduct that occurred 56 years ago, the claims were not time-barred when filed because the New York State Legislature had recently enacted the New York Child Victims Act, 2019 Sessions Law News of New York,

Chapter 11 (S. 2440), which amended CPLR § 214-g to enable certain previously-barred claims by childhood victims of sexual abuse to commence timely actions against alleged abusers. *See* CPLR 214-g.

In accordance with rules designed to protect the name and identity of certain types of parties to a lawsuit, Plaintiff filed the claim using a pseudonym pursuant to N.Y. Civil Rights Law §50-b. (Dkt. 1-11 at ¶ 4.) Within days, however, Plaintiff's true identity was discovered and revealed to the media by a website known as "Zeus News." (7-28-22 Transcript ("Tr.") at 11:9-12:7) (filed under seal).

On January 6, 2022, Defendant filed an Answer to the Amended Complaint. (Dkt. 1-11.) In his Answer, Defendant raised numerous denials and defenses, including an unconventional introduction[1] arguing in a formal pleading that Plaintiff's claims were a "brazen shakedown masquerading as a lawsuit" based on "lawyer-driven lies" and that Plaintiff is not worthy of belief because she is allegedly a self-identified "psychic" who "channels the dead," speaks to animals, and "divines signs" from smudges, coffee grinds, and tea leaves. (*Id.* at pp. 1-2.) Defendant also raised an alibi defense, claiming that at the relevant time "[i]n the spring of 1965, it is easily proven that [Defendant] was on a tour of the United States, and later the U.K." (*Id.* ¶ 11.)

---

[1] The "introduction" in Defendant's Answer failed to conform itself to a response to the specific allegations in the Amended Complaint, as required by CPLR 3018(a).

Shortly after filing the Answer, on January 12, 2022, Defendant removed the action to this Court. (Dkt. 1) (notice of removal). This Court's subject matter jurisdiction was based on diversity of citizenship of the parties. (*Id.*)

2. *The Commencement of Discovery*

In the ordinary course, on January 21st, the Court set an initial scheduling conference for March 9th, but at the request of counsel for Defendant, the initial conference date was adjourned and thereafter held on March 18, 2022. (Dkt. 23.)

At the initial conference Plaintiff and Defendant jointly requested an extended discovery period, and the Court granted that joint request. (*Id.* 3-18-22 Transcript ("Tr.") 12:3. Fact discovery was set to be completed by January 31, 2023, and expert discovery was set to be completed by April 30, 2023. (Dkt. 21.) The parties, thereafter, immediately started discovery, and Defendant's team of multiple attorneys promptly commenced an exceedingly aggressive discovery program that included numerous demands for documents, interrogatories, third-party subpoenas to Plaintiff's siblings and friends, third-party depositions, and the use of "former federal investigators" who "developed relationships" with members of Plaintiff's family. (7-28-22 Tr. at 19:9-12.)

Defendant repeatedly complained to the Court that Plaintiff's discovery responses were not good enough: they were too late, or too inadequate, or both. (*See, e.g.,* Dkt. Nos.25, 28, & 33) (defense counsel letters to the Court).

*3. The July 15th Order*

On July 15, 2022, after a conference with counsel (*see* 7-15-22 Tr.; Dkt. 42),

the Court issued the Order that is directly relevant to Defendant's motion for Rule

37(b) sanctions.  The Court's July 15th Order directed:

> "1. That Plaintiff will produce all documents responsive to Defendant's First
> Set of Requests for Production on or before July 22, 2022;
> 2. That Plaintiff will respond to Defendant's Second Set of Requests for
> Production on or before August 10, 2022; and
> 3. That Plaintiff will produce all documents to Defendant's Second Set of
> Requests for Production on or before August 15, 2022."

(Order, dated 7-15-22; Dkt. 36.)

In an effort to comply with the Court's July 22nd deadline, Plaintiff's

counsel, Daniel Isaacs and Peter Gleason, spoke with Plaintiff over the weekend of

July 16th and 17th and then met with Plaintiff on Monday, July 18th at her home.

(7-28-22 Tr. 5:15-6:16.)  After that initial meeting on the 18th, Gleason met again

with Plaintiff on Tuesday July19th at Plaintiff's home (which is in Connecticut).

At that second meeting, Plaintiff tendered Gleason a small file that was not of

sufficient weight to be responsive to the outstanding request, in the light of emails

that Defendant had obtained pursuant to third-party subpoenas to Plaintiff's

siblings.  (*Id.* at 7:2-7.)  Plaintiff also indicated that she had three small boxes of

materials pertaining to the case that she did not want to produce to Defendant or

even turn over to Gleason.  (*Id.* at 7:15-23.)

[Although Defendant in his motion papers claim that these boxes contained "thousands of pages of documents,"[2] that is an exaggeration. As explained by Gleason, the three boxes were small boxes "that would accommodate a ream of paper, 500 pages. They weren't filled to the brim, but there was some substantial weight to these documents." (*Id.* at 7:10-13.)]

In any event, on July 19th Plaintiff declined to provide Gleason with the documents because they would be embarrassing to her. (*Id.* at 8:1-2.)[3] As noted above, Plaintiff's identity as an alleged victim of childhood sexual abuse had previously been exposed on the Internet shortly after the lawsuit was commenced, despite her efforts to remain anonymous. Gleason explained to Plaintiff that her lack of cooperation would require him to file a motion to withdraw as counsel and that, as an alternative, require him to file a motion to withdraw. Gleason also explained to Plaintiff that she also had the right to terminate him and Isaacs as Plaintiff's counsel. (*Id.* at 8:25-9-3.) Shortly thereafter, Plaintiff sent Gleason and Isaacs an email terminating them as Plaintiff's counsel. (*Id.* at 9:5-7.) Later that same day, Isaacs and Gleason informed the Court that Plaintiff had discharged them. (Dkt. 38.)

---

[2] Def. Mem. at p. 12 ("COUNSEL NEVER COLLECTED OR REVIEWED THOUSANDS OF PAGES OF DOCUMENTS") & *id.* at p. 13 ("Gleason said each of these boxes appeared to contain approximately 500 pages of material…"); ECF Dkt. 50.

[3] Gleason also explained to the Court that he was constrained by the attorney-client privilege from providing additional information on the reasons why Plaintiff did not want to turn over the documents. (7-28-22 Tr. at 8:2.)

*4. The Dismissal of the Action*

On July 28, 2022, the Court conducted an in-person conference on the status of the matter. Plaintiff was also present at the conference, as reflected by the sealed transcript.

At the conference, Isaacs and Gleason recounted the events set forth above, and the Court noted that the July 22nd date for the production of documents was not complied with. (*Id.* at 14:6.) During the course of the conference, the Court urged Gleason and Isaacs to speak privately with Plaintiff about her intentions: whether she intended to get new counsel, proceed *pro se,* or discontinue the lawsuit. (*Id.* at 14: 21-23.)

Before having that discussion, Defendant's counsel repeated his endless but unsupported accusations that Gleason and Isaacs had "prevented us from getting to the truth" and claimed that Plaintiff had admitted that Plaintiff "deleted and no longer possesses critical communications with third parties." (*Id.* at 16:25-17:10.) Although Defendant repeatedly referred to the "critical" information that was either not produced by Plaintiff or "destroyed" by Plaintiff, Defense counsel did not at the July 28th conference—and does not now in the current motion—provide any evidence about the "destroyed" documents. Nor does Defendant's counsel provide any evidence about how Plaintiff's emails to her siblings after the lawsuit

was filed were "inconsistent fundamentally with the major material allegations in the case." (*Id.* at 27:7-13.)

These claims by Defense counsel must be examined in context. For many years, victims of childhood sexual abuse were regularly discredited and labeled liars or delusional in the mental health community because the victims delayed for years revealing the abuse, often recanted the allegations after they were made, and made conflicting or unconvincing disclosures. The biases in the mental health community against confirmed victims of childhood sexual abuse were the subject of a path-breaking article in 1983 by Roland C. Summit, M.D., *The Child Sexual Abuse Accommodation Syndrome,* 7 Child Abuse and Neglect 177-93 (1983).[4]

Over time, the article's teaching became relevant in the law where prosecutors in criminal cases and plaintiffs in civil cases cited the syndrome to rebut allegations of fabrication, and the law has struggled to find a proper balance for the use of the syndrome as evidence. *See, e.g. People v. Spicola*, 16 N.Y.3d 441 (2011) (noting the permissible uses of the syndrome under New York law); *cf. State v. J.L.G.,* 234 N.J. 265 (2018) (rejected its use as evidence under New Jersey law). Regardless of its admissibility or use at trial, however, Defendant's vicious character assault on Plaintiff reflects fundamental misunderstandings and insensitivities about the nature and impact of childhood sexual abuse, as revealed

---

[4] Available at https://cape.sccgov.org/sites/g/files/exjcpb1061/files/document.

by Defense counsel's repeated suggestions that the claim lacks credibility because it is decades old or the product of delusions or lacks credibility because of some (unexplained) inconsistencies in the way the victim has related the events.

In any event, it appears that at the July 28th conference Defense counsel was suggesting that after Plaintiff's name was revealed in the media, Plaintiff communicated by email with members of her family about the public allegations against the Defendant.  Defense counsel also apparently obtain copies of those email communications either by means of third-party subpoenas to the family members or by means of Defendant's former federal investigators who developed relationships with those family members.  (*Id.* at 18:11 ("They [Plaintiff's counsel] knew about these emails long ago, because we produced them long ago.")).[5]

Remarkably, Defense counsel urged the Court to sanction Plaintiff's counsel because "they should have had these emails before they even filed the lawsuit." (*Id.* at 24:24.)   That position, which is repeated in the sanctions motion, makes little sense.  Plaintiff wrote the emails after the lawsuit had been filed and after Plaintiff's identity was exposed in the media.

During the conference, Defense counsel also represented to the Court that "in fact" he knew that Plaintiff discharged counsel because Plaintiff's counsel was "sloppy," at least according to statements that a relative of Plaintiff allegedly made

---

[5] "Long ago" means "weeks ago" according to Defense counsel.  (*Id*. at 18:17.)

to a former federal investigator who "developed a relationship" with Plaintiff's family members. (*Id.* at 19:2-16.) Finally, Defense counsel proposed that in the event that Plaintiff decided to proceed with the action, the Court should enter an order "for forensic examination of her computer, her cell phone and other electronic devices with a neutral third party, either appointed by the Court or selected by the parties, to examine the plaintiff's devices and storage units to determine whether there's been spoliation, and if so, whether deleted evidence can be recovered." (*Id.* at 21:20-25.) Knowing that such a prohibitive expense could easily exceed tens of thousands of dollars, Defense counsel also urged the Court to require Plaintiff to pay the full cost of the forensic examinations. (*Id.* at 22:20-23:2.)

After a short recess, Plaintiff informed the Court that Plaintiff wanted to discontinue the lawsuit with prejudice, and based on that, the Court ordered the dismissal of the action with prejudice. The Court also directed Defense counsel to inform the Court in the event that Defendant wanted to seek additional relief. (*Id.* at 35:19-36:15.)

*5. The Motion for Sanctions and the Cross-Motion*

On August 4, 2022, Defendant filed a letter requesting leave to file a Rule 37(b) motion for sanctions against Plaintiff's counsel, jointly and severally, but not against Plaintiff. (Dkt. 45.) The Court granted that request, and in doing so, the

Court also noted that there was a potential conflict between Plaintiff and Plaintiff's counsel such that there were serious doubts that Plaintiff's counsel could adequately represent Plaintiff's interests. Thus, the Court ordered an extended briefing schedule "to allow Plaintiff to seek independent legal advice and to decide whether to submit her own opposition papers to Defendant's motion." (Dkt. 46) (endorsed order).

Since then, Defendant filed his motion for sanctions and the Plaintiff has also filed papers in response to the motion. (Dkt. 50 & 52.)[6] Although Defendant's papers often attack Isaacs and Gleason for commencing the action, Defendant's motion is limited to Rule 37(b).[7] Based on the record developed at the July 28th conference and the subsequent filings, Isaacs and Gleason are submitting this memorandum of law and their supporting papers in opposition to Defendant's Rule 37 motion. In addition, in light of the potential conflict already noted by the Court and based on Plaintiff's prior discharge of Plaintiff's counsel, Isaacs and Gleason submit this memorandum in support of their cross-motion under Local Rule 1.4 to withdraw formally as counsel for the Plaintiff.

---

[6] As directed by the Court, Gleason and Isaacs forwarded to Plaintiff the Court's orders on the sanctions issues and Defendant's motion for sanctions. In addition, in order to facilitate the adjudication of the motion and as a courtesy to Plaintiff, Gleason filed Plaintiff's papers with the Court's ECF system as presented to them by Plaintiff. (*See* Dkt. 52.)

[7] There are several procedural conditions and substantive limitations on a Rule 11 motion and the standard for frivolousness is high. For example, a factual contention is sanctionable only when the specific allegation is utterly lacking in support. *Kiobel v. Millson*, 592 F. 3d 78, 81 (2d Cir. 2010), and nothing in the law under Rule 11 requires an attorney to disbelieve his or her own client. *See Friedgood v. Axelrod,* 593 F. Supp. 395, 397 (S.D.N.Y. 1984).

*The Rule 37(b) Standard*

Rule 37(b) of the Federal Rules of Civil Procedure addresses the Court's authority to issue sanctions for failure to comply with a court order. In relevant part, Rule 37(b)(2)(A) provides: "If a party. . . fails to obey an order to provide or permit discovery . . . the court may . . . (iii) strike a pleading in whole or part [or] (iv) dismiss the action or proceeding in whole or part."

Rule 37(b)(2)(C) further provides: "Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising the party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

In short, Rule 37(b) provides for sanctions against parties who unjustifiably fail to comply with a court order to provide discovery.[8] Courts impose such sanctions as disciplinary measures to ensure that a party will not benefit from its own failure to comply with discovery.[9] Sanctions are also intended to act as a specific deterrent against a party at fault in order to facilitate compliance with particular orders and as a general deterrence against other parties in future litigation.[10] "Provided that there is a clearly articulated order of the court requiring

---

[8] *Quadrizzi v. City of New York*, 127 F. R.D. 63, 73 (S.D.N.Y. 1989) (Walker, J.).
[9] *Id.*
[10] *Id.*

specific discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order."[11]

District Courts have wide discretion in determining whether to impose sanctions.[12] In determining whether to impose sanctions for discovery violations, courts should consider the entire history of the litigation to assess whether noncompliance was attributable to some fault of the disobedient party.[13] The degree to which the offending party failed to comply with discovery, the importance of the information withheld, and the extent of the prejudice occasioned by the delay all bear on a court's determination of whether to impose sanctions.[14] Four factors are often examined in the Second Circuit in determining whether sanctions should be imposed: "(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party had been warned that noncompliance would be sanctioned."[15] Dismissal or default is a severe sanction, which can be appropriate in an extreme situation where a court finds willfulness, bad faith, or any fault on the part of the non-compliant party.[16]

---

[11] *Daval Steel Prod. v. M/V Fakredine,* 951 F. 2d 1357, 1363 (2d Cir. 1991).
[12] *Id.* (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U. S. 639, 642 (1976) (per curiam)).
[13] *Id.* at 74.
[14] *Id.*
[15] *Guggenheim Capital LLC v. Birnbaum,* 722 F. 3d 444, 451 (2d Cir. 2013).
[16] *Id. See also Bambu Sales, Inc. v. Ozark Trading, Inc.,* 58 F. 3d 849, 853 (2d Cir. 1995) (order ending litigation is an extreme measure).

*Argument*

Defendant's motion is filled with *ad hominem* attacks and groundless speculation about other individuals' knowledge and motives. Defendant's motion is also long on Defendant's fame and importance but very short on presenting the Court with specifics, such as the specific discovery that Defendant claims was requested and the specific documents that Defendant claims Plaintiff's counsel failed to produce pursuant to the Court's July 15th Order. The July 15th Order directed Plaintiff to produce by July 22nd all documents responsive to Defendant's first request for documents. (Dkt. 36). Since the motion is predicated on an alleged sanctionable violation of the July 15th Order, Defendant should have provided the Court with the specifics of the request. The Defendant should have also presented evidence to show how the response was inadequate; how the evidence was important to the case; and how the alleged misconduct or the delay prejudiced Defendant.

Rather than focus on matters actually relevant to Defendant's motion, Defendant's counsel repeatedly attacks Isaacs and Gleason with generalities and bald conclusions about their conduct and Defendant's innocence. Nowhere does Defendant provide the Court with the requests he says were ignored or with any showing of the importance of the unproduced documents to the case, documents that it appears that they already had through third-party subpoenas. Nor does the

motion provide the Court with a precise statement of how or when Isaacs and Gleason failed to produce records in their possession or control.

These insufficiencies, alone, require that the motion be denied. "Under Rule 37, an attorney may only be sanctioned for personally violating a discovery order or for advising a client to do so."[17] To support a sanctions finding against an attorney, the Court must provide details as to when and in what way counsel's conduct justified sanctions.[18]

Slinging mud may yield headline sound bites but the law on sanctions ought to deal in specifics, not generalities. "[S]anctions imposed on an attorney are a matter of serious concern that extends well beyond the monetary issues involved."[19] They should not be imposed lightly.[20] And before passing judgment on whether to sanction a party, a party's counsel, or both, the Court ought to have a clear record of what the party or attorney specifically did or failed to do in order to assess the appropriateness of sanctions. The Second Circuit requires a District Court to make a careful apportionment of the costs to be paid by an attorney and

---

[17] *Moore's Federal Practice,* 3d § 37.23[4][a] at p. 37-49 (citing *Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc.,* 339 F. 3d 180, 185 (3d Cir. 2003)); *see also Bolger v. District of Columbia*, 248 F. R.D. 339, 346 (D.D.C. 2008) ("there is no firm evidence that any counsel of record intentionally violated or sough to violate a discovery order or obligation" and even a failure to diligently follow up on discovery demands would probably not warrant personal sanctions against an attorney under the applicable legal standards).
[18] *Naviant, supra,* at 185.
[19] *Id.*
[20] *Schoenberg v. Shapolsky*, 971 F. 2d 926, 936 (2d Cir. 1992).

by the client.[21] Generalities will not do; a District Court's failure to relate the grounds for sanction to the attorney's conduct will necessarily require a remand.[22]

Rather than filing a motion with the Court that satisfies these standards, Defendant has (again) taken the opportunity to make largely irrelevant (and unsupported) contentions in a public record, apparently designed for a wider audience.

### 1. Plaintiff's Counsel Did Not Violate the Court's July 15th Order

The evidence in this record shows that soon after the Court's July 15th Order, Isaacs and Gleason sought to obtain responsive documents from the Plaintiff but the Plaintiff objected to turning over the records to her attorneys because of their embarrassing nature.

The context is important. When Plaintiff filed the action, her name was purposely not used to protect her identity but shortly after the filing Plaintiff's name was exposed and reported in the media without her knowledge or consent. Within short order, Defense counsel's investigators somehow ingratiated themselves with Plaintiff's family and Defense counsel issued subpoenas to her family members who turned over emails between the Plaintiff and them about the recent media coverage over the lawsuit.  Under these circumstances, Plaintiff had

---

[21] *In re Yellen Herstic*, 804 F. 2d 191, 193 (2d Cir. 1986).
[22] *Marin v Brown,* 63 F. 3d 1252, 1263-64 (3d Cir. 1995).

good reason to be concerned that very personal or embarrassing information about her would also end up in the media.

In the light of Plaintiff's unwillingness to provide him with the documents, Gleason informed Plaintiff that she needed to turn over the materials in her possession and that her continued refusal would require him and Isaacs to withdraw their representation. Plaintiff nevertheless refused to turn over the documents in her possession and even refused to permit Gleason to inspect the documents. (7-28-22 Tr. at 32:1-17.)

Isaacs and Gleason promptly informed the Court on January 19th that they had been discharged and within ten days the parties appeared in person before the Court. There is simply no bases for sanctioning Isaacs or Gleason because they did not willfully defy a court order or advise Plaintiff to violate a court order—they did the opposite.

At the July 28th appearance, however, Defense counsel accused Plaintiff of "destroying" "critical" evidence and demanded — at Plaintiff's cost— an exceedingly invasive and expensive forensic examination of her personal computer, her cell phone, and any other electronic devices. After the Court invited Plaintiff to make a decision about going forward or dismissing the case, Plaintiff decided to drop the lawsuit—six days after the July 22nd production deadline.

While Defense counsel endlessly complains about Isaacs and Gleason and often proclaimed his client's "utter" innocence, the simple fact of the matter is that nothing has been established to prove Defendant's innocence or his alibi defense,[23] and nothing has been established to prove that Isaacs or Gleason personally violated the Court's July 15th Order or that they advised Plaintiff to violate the July 15th Order. As such, the Court must deny the motion because there is no evidence that they willfully or otherwise violated the July 15th Order or advised Plaintiff to do so.[24]

The other relevant considerations weigh strongly against the motion. Defendant has failed to show that emails between Plaintiff and her siblings are "critical" to the case and the entire discovery issue was promptly raised and addressed by the Court with a dismissal of the action six days after the July 22nd deadline at the request of Plaintiff.

---

[23] The article in *Rolling Stone* cited by Defendant (Dkt. 51-2) obviously is not a proper or admissible form of proof of Defendant's alibi defense because the magazine article by a journalist in a music industry publication citing "Dylan experts" lacks a foundation in personal knowledge and is necessarily predicated on unsworn hearsay statements by unknown declarants.
[24] *In re Yellen Herstic*, 804 F. 2d 191, 193 (2d Cir. 1986) (on the record before the Circuit the record was inadequate to support the conclusion that the attorney should bear the cost of a discovery sanction under Rule 37 when the record suggests that it was the plaintiff who failed to produce discovery); *Myer's Lawn Care Serv. v. Fragale,* 8-19-75714-reg at * 7 (Bankr. E.D.N.Y. Sept. 22, 2022) (courts will hold an attorney liable jointly with a client as a discovery sanction typically in two circumstances: (1) where the attorney and the client engaged in a coordinated effort to defy a discovery order or (2) where the attorney was primarily responsible for the discovery misconduct) (citing cases); *Naviant, supra, at* 185 ("Under Rule 37, an attorney may only be sanctioned for personally violating a discovery order or for advising a client to do so."); *Witherspoon v. Ridinger*, 03-cv-5462 (JBS) at *11 (D.N.J. July 20, 2005) (failure to comply with discovery obligation does not appear to be the fault of defense counsel).

*2. The Procedural History of this Case and Its Impact on
Plaintiff Show That Sanctions Are Not Appropriate*

The Court should also deny the motion on the ground that further action

would be cumulative and excessive.[25]  Imposing sanctions beyond the dismissal in

the form of a punitive fine is not necessary or proper under the circumstances of

this case.

On July 28th, the Court entered an order dismissing with prejudice the

Plaintiff's claims at Plaintiff's request.  The record shows that Plaintiff, who

alleges to be a victim of childhood sexual abuse, made this decision based on a

series of events occurring after her name was exposed in the media, her family was

investigated and interrogated under oath, a forensic examination of her computer

was on the table, and she feared further embarrassment caused by the production of

additional personal information about her.  While Defendant claims that the

unproduced documents were "fundamentally inconsistent" with Plaintiff's

allegations, Defense counsel offered no evidence to support that claim.

While Defense counsel may want to proclaim his client's innocence and

indict Plaintiff and her counsel as liars and shysters, the simple fact is that none of

these contentions have been established and nothing in the record demonstrates the

truth or falsity of Plaintiff's allegations or Defendant's denials.  Under these

---

[25] *Commerce & Indus. v. Newhall Contracting, Inc.*, 2:13-cv-30260 at * 5  (S.D. Va. Sept. 29, 2015).

circumstances, Plaintiff's only real fault was her understandable unwillingness to continue the public and invasive lawsuit, nothing more and nothing less.

Since there is no factual basis for making any moral or legal judgments about the parties' respective positions on the merits, this is not the type of case where a party's failure to produce documents or the history of a party's conduct demonstrates the kind of litigation misconduct that might justify an award of fees as a punishment on top of an order of dismissal. Rule 37(b)(C) states that a court must impose fees as a sanction unless other circumstances make an award of expenses unjust. We suggest that this is precisely that type of circumstance: that the dismissal was a sufficient result; and that a fee award on top of that would be greater than necessary to comply with the purposes of Rule 37.

### 3. *Defendant Has Failed to Show Any Causal Connection Between the July 15th Order and the $50,000 in Legal Fees He Demands*

Defendant demands $50,000 as a sanction but provides the Court with no basis for that demand. Defendant's counsel seemingly picked a number, $50,000, to serve as a punitive sanction and then added a request for unspecified additional fees. Yet at the July 28th conference, the Court told Defense counsel that $50,000 was an excessive demand, (7-28-22 Tr. 25:5-8), and Defense counsel nevertheless persists in the motion on demanding "only" $50,000, claiming that this number is a reduction (by unspecified amount) of the "full amount of fees and costs incurred by Defendant as a direct result of Plaintiff's counsel's discovery misconduct."

This is a patently inadequate basis for such a demand. Rule 37(b) plainly states that a fee award for failure to comply with a discovery order must be determined by examining "the reasonable expenses, including attorney's fees, *caused by* the failure…." FRCP 37(b)(C) (emphasis added). Simply put, there must be a nexus between the noncompliance and the amount of fees awarded as a discovery sanction, and in making that determination the Court should consider the amount and the impact of a monetary sanction, the seriousness of the violation, and where the fault lies.[26] The Court, as one leading commentator on federal practice notes, "must honor the basic premise that the amount of the sanction may not exceed the expenses that are reasonably attributable to the violation."[27] Here, given the short period from July 22 through July 28, the reasonable expenses incurred by the failure to produce documents on July 22 must be negligible, as Defense counsel's time records would likely show, had they been provided to the Court.

And Defense counsel surely knows after 37 years of practice in federal court that the typical way to make a demand for fees is to submit proof of reasonable expenses and reasonable fees, based on contemporaneously recorded and detailed

---

[26] *Turnbull v. Wilcken,* 893 F. 3d 256, 259 (10th Cir. 1990); *accord Cobell v. Babbit*, 188 F. R.D. 122, 127 (D.D.C. 1999) (a near but-for connection must exist between the discovery violation and the amount of fees awarded) (citing *Westmoreland v. CBS, Inc.*, 770 F. 2d 1168, 1179 (D.C. Cir. 1985) and *Turnbull, supra,* at 258).

[27] Moore's *Federal Practice* 3d § 37.51[9][d] at p. 37-118.

billing records showing the connection between the discovery order being enforced and the costs of that enforcement effort. Yet Defense counsel did not submit any evidence of any expenses or fees, reasonable or otherwise. Nor did Defense counsel request the opportunity to later submit billing records to justify the $50,000 demand. As such, there is no evidence in the record to show any connection between the July 15th Order and any enforcement efforts by Defendant. Indeed, the reasonable time expended must be negligible. On that independent basis, the Court should also deny the motion for lack of evidence.

*4. Before Any Sanction Is Imposed The Court Should Conduct a Hearing*

In the event that the Court were to consider any kind of award of fees as a sanction against Isaacs and Gleason, we respectfully request that the Court conduct a hearing on all the relevant factors before issuing any kind of sanction. Sanctions against an attorney for misconduct are a serious matter that can have repercussions far beyond the money involved, and courts have noted that such a hearing is required, particularly where there are factual issues raised by Rule 37 motion for sanctions.[28] Thus, to the extent required, Plaintiff's counsel request a hearing limited to the issues of whether they willfully violated the July 15th Order, the relative significance of the discovery not produced, and the actual and reasonable expense incurred between July 23rd and July 28th to enforce the July 15th Order.

---

[28] *See Flaks v. Koegel*, 504 F. 2d 702, 712 (2d Cir. 1974) (courts should not resolve factual matters, such as willfulness, based on affidavits); *In re Yellen Herstic, supra*, 804 F. 2d at 193.

*Conclusion*

There is no basis for concluding that Isaacs or Gleason willfully violated a discovery order and there is no evidence that they advised Plaintiff to do so. In addition, Defendant has expressly waived any request that Plaintiff be sanctioned. Finally, the action was dismissed with prejudice and a fee award on top of that would be excessive under the circumstances. Accordingly, the Court should deny the motion for sanctions. The Court should also grant the formal motion to withdraw because it is clear that there is a potential conflict of interest between Plaintiff and Plaintiff's counsel. (*See* Court Order; Dkt. 46.)

Dated: November 18, 2022

*s/Nathaniel B. Smith*

_____
Nathaniel B. Smith
Attorney for Plaintiff's Counsel