UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| J.C., | |
| Plaintiff, | |
| -v.- | 22 Civ. 323 (KPF) |
| ROBERT ALLEN ZIMMERMAN, *a/k/a Bob Dylan,* | **OPINION AND ORDER** |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

This case, which began in August 2021 with shocking allegations of child sexual abuse occurring nearly six decades earlier, ended with a whimper, when Plaintiff J.C. consented to the dismissal of her complaint with prejudice on July 28, 2022. Defendant Robert Allen Zimmerman, known professionally as Bob Dylan, now moves for sanctions against Plaintiff's attorneys, Daniel W. Isaacs and Peter J. Gleason (together, "Plaintiff's Attorneys" or the "Attorneys"), for their repeated noncompliance with the Court's discovery orders, while Plaintiff's Attorneys cross-move for withdrawal from this case. For the reasons set forth in the remainder of this Opinion, Defendant's motion is granted in part, and the Attorneys' cross-motion is granted in full.

## BACKGROUND[1]

### A.     The Initial Complaint and Its Removal to This Court

On August 13, 2021, Plaintiff filed an action in New York State Supreme Court invoking the New York Child Victims Act, which extended the statute of limitations for certain civil and criminal child sexual abuse cases in New York. (Dkt. #1-1).  According to Plaintiff's initial verified complaint, during a six-week period in April and May 1965, Defendant befriended Plaintiff, plied her with drugs and alcohol, and then sexually abused her at his apartment at the Chelsea Hotel in Manhattan.  (Id.).  Plaintiff claimed assault, battery, false imprisonment, and intentional infliction of emotional distress.  Plaintiff served the complaint on Defendant on December 13, 2021, and filed an amended verified complaint on December 27, 2021, which complaint, among other changes, modified the period of the alleged abuse to be the spring of 1965. (Dkt. #1-9, 1-10).[2]

Each of Plaintiff's state-court complaints included a verification from Mr. Isaacs, made under penalty of perjury, that stated in relevant part:

> That I have read the foregoing [Complaint/Amended Complaint] and know the contents thereof; that based

---

[1]    Unless otherwise noted, citations to specific pages in docket entries reflect the page numbers provided by the Court's Electronic Case Filing ("ECF") system.  For ease of the reader, the Court refers to Defendant's memorandum of law in support of his motion for sanctions as "Def. Br." (Dkt. #50); to the Attorneys' memorandum of law in opposition to the motion for sanctions and in support of their cross-motion for leave to withdraw as "Pl. Att'y Opp." (Dkt. #59); to Plaintiff's sealed response as "Pl. Br." (Dkt. #57); to Defendant's reply memorandum in further support of his motion for sanctions as "Def. Reply" (Dkt. #60); and to the Attorneys' reply letter brief in further support of their motion for leave to withdraw as "Pl. Att'y Reply" (Dkt. #61).

[2]    Unless otherwise indicated, references in this Opinion to the "complaint" are to Plaintiff's amended verified complaint.

on the information derived from the files maintained in my office, which is maintained in the normal course of business, and those facts and documents provided to me by J.C., the contents of the [Complaint/Amended Complaint] are true to my own knowledge except as to those matters alleged to be upon information and belief, and as to those matters, I believe them to be true.

The reason this affirmation is not made by the plaintiff is that the plaintiff resides in a county other than where the undersigned maintains his office for the practice of law.

(Dkt. #1-1 at 13; Dkt. #1-10 at 13).[3]

Defendant filed an answer on January 6, 2022 (Dkt. #1-11), and a corrected answer later that day (Dkt. #1-13). Defendant began each answer by denouncing Plaintiff's lawsuit as "a brazen shakedown masquerading as a lawsuit … filed in bad faith for the improper purpose of extracting a huge payout on the threat of negative publicity." (Dkt. #1-11 at 2; Dkt. #1-13 at 2). Defendant also posed a challenge to Plaintiff's Attorneys specifically:

Mr. Dylan may have seemed like an easy mark for the lawyers who filed and hoped to profit off of this fraudulent lawsuit. They likely assumed he would not be up for the fight and would instead pay extortion to avoid the burden, publicity and expense of defending himself. They could not have been more wrong. Mr. Dylan seeks and will achieve justice, vindication and full accountability.

(Dkt. #1-13 at 3-4).

---

[3]     While not part of its analysis, the Court notes that Mr. Isaacs responded to press skepticism of the timeframe alleged in Plaintiff's pleadings by asserting, "The claims were vetted before the case was filed and we did our research. It's our position that the evidence will establish that [Defendant] was in New York during the relevant time period." (Dkt. #51-2 at 4).

On January 12, 2022, Defendant removed the action to this Court based on the diversity of the parties. (Dkt. #1). An initial pretrial conference was held telephonically before this Court on March 18, 2022. (Dkt. #23 (transcript)).[4] At the conference, the Court not only set a discovery schedule in this case, but addressed — and rejected — Plaintiff's motion for disqualification of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), one of the two firms representing Defendant. (*See* Dkt. #15 (pre-motion letter from Mr. Gleason); Dkt. #17 (Gibson Dunn response); Dkt. #23 at 4-5 (Court's denial of leave to file disqualification motion)).

The Court then proceeded to discuss discovery issues with the parties. The parties had sought a slightly elongated fact discovery schedule, and Mr. Isaacs explained that such a schedule was required because: (i) there would be several out-of-state witnesses; (ii) there were "voluminous … documents and materials," including numerous public statements by Defendant; and (iii) "this is a significant case that is obviously important to both sides and there is going to be a lot of stuff involved." (Dkt. #23 at 6-7). Mr. Isaacs also confirmed for the Court that Plaintiff did not have a tremendous amount of electronically stored information ("ESI") that would be produced in discovery. (*Id.* at 8). He ended this portion of the conference by assuring the Court that "[w]e are just looking forward to getting the discovery process going and litigating this matter in the courtroom." (*Id.* at 9; *see also id.* at 9-13 (defense counsel explanation

---

[4]    Efforts to meet and confer prior to the initial pretrial conference were hampered by Plaintiff's Attorneys' cancellation of two such meetings with defense counsel on February 23 and March 2, 2022. (*See* Dkt. #51-4, #51-7).

for extended discovery schedule)).  As it brought the conference to a close, the Court reminded the parties that "as you might deduce from this conversation, I'm not very interested in extending discovery deadlines so, please, get started on your discovery and come to me with any problems." (*Id.* at 15).  The Court filed the case management plan proposed by the parties later that day.  (Dkt. #21).

**B.   The Discovery Disputes**

Problems arose soon after the initial conference.  Defendant served his First Requests for Production and First Set of Interrogatories on March 18, 2022, which made Plaintiff's responses to both due on April 18, 2022.  Mr. Isaacs requested extensions from defense counsel until May 2, then May 3, and then May 4, 2022.  (Dkt. #25; *see also* Dkt. #51-8, 51-9).  Two weeks later, despite promises from Mr. Isaacs, Plaintiff had produced nothing, prompting Defendant to seek intervention from the Court for the first time.  (Dkt. #25).

Instead of responding within three days, as required by the Court's Individual Rules of Practice in Civil Cases, Mr. Isaacs responded one week later, noting that his failure to abide by his promise to provide responses had been "not intentional," but rather a consequence of the press of business and a trip to Ghana.  Mr. Isaacs "represent[ed] to the Court and [defense counsel] that I shall serve Plaintiff's responses a week from today." (Dkt. #26).  The Court accepted the response as a motion for an extension of time, which it granted with a written order (the "May 24 Order") and an admonition:

> Plaintiff shall serve her responses on or before **May 30, 2022**.  More broadly, Plaintiff is cautioned that future failures to meet the discovery deadlines set forth in the parties' case management plan or this Court's rules … will not be tolerated.

(Dkt. #27 at 2).

On May 30, 2022, Plaintiff responded to Defendant's interrogatories, but not his requests for production of documents.  By letter dated May 31, 2022, defense counsel again sought a conference before the Court (Dkt. #28), but withdrew the request when Plaintiff's Attorneys "provided responses and objections" shortly after the letter was filed (Dkt. #29).  The Court did not then set a conference, but warned Plaintiff and her Attorneys a second time:

> The Court has previously warned Plaintiff that failure to abide by the discovery deadlines will not be tolerated. (Dkt. #27).  The Court expects that Plaintiff will heed that warning and meet her obligations in this case without Court intervention.   If, however, Plaintiff continues to neglect her responsibilities in this case, the Court will take appropriate action at that time.

(Dkt. #30 at 2).

Of significance to Defendant's sanctions motion, on June 1, 2022, one day after Plaintiff's responses were submitted, Defendant produced approximately 60 emails to or from Plaintiff that he had received in the course of third-party discovery.  (*See* Dkt. #63 (filed under seal)).  The vast majority of the emails were exchanged with Plaintiff in the months following the filing of her initial complaint in New York State Supreme Court, and before the removal of her case to this Court.  (Dkt. #63-2, 63-3).  The Court has reviewed the emails, and without going into the specifics of their content, the Court agrees

6

with the defense that they call into question the veracity of Plaintiff's allegations in her complaint.

One month later, on July 1, 2022, Defendant renewed his request for Court intervention. (Dkt. #33). This time, the defense complained that although the parties had agreed that June 30, 2022, would be the date for substantial completion of Plaintiff's document production, Plaintiff had produced only 49 pages of documents, omitting numerous emails that defense counsel knew existed because of their June 1 production. To Defendant, Plaintiff's "token production [made] under the wire" was indicative of inadequate pre-suit investigation by Plaintiff's attorneys. (*Id.* at 2). Mr. Isaacs responded by letter dated July 5, 2022, decrying the criticism of the Attorneys' pre-suit investigation, and listing the areas in which Plaintiff had complied with her discovery obligations, while noting obliquely that the Attorneys "continue to diligently search for additional documents responsive to their production demand (discovery is an ongoing process)." (Dkt. #34).

Dissatisfied with the progress of discovery, the Court ordered the parties to appear for a telephonic conference on July 15, 2022. (Dkt. #35; *see also* Dkt. #42 (transcript)). Mr. Isaacs began the conference by acknowledging that, despite the June 30 substantial completion deadline, Plaintiff had only just given to him, "over the last couple of days," additional texts and emails to produce to Defendant. (Dkt. #42 at 3-5). Mr. Isaacs then represented to the Court that "once I give them these last few text messages, which I just received, we have nothing other, at this point, to provide." (*Id.* at 4; *see also id.* at 5

(noting that Plaintiff "doesn't text" and has "very small in the way of emails," but that what Plaintiff had produced to him comprised both texts and emails); *id.* at 6 (acknowledging that only correspondence from defense counsel had "clued [Mr. Isaacs] in to the fact that [Plaintiff] may have responsive texts or emails")). Mr. Isaacs also noted that certain documents previously in Plaintiff's possession had been destroyed in a flood several years earlier. (*Id.* at 5-6). One of Defendant's counsel then explained the difficulty he had experienced in taking "a key deposition" without receiving a complete discovery production from Plaintiff. Worse yet, counsel estimated that "the plaintiff has thousands — not hundreds, but thousands — of emails that are responsive to our clear document requests that we propounded four months ago." (*Id.* at 8; *see also id.* at 19 ("[Plaintiff's] counsel knew long before [July 14, 2022,] that there were dozens of emails that he had failed to produce, because we … produced those third-party emails to [Plaintiff's counsel] weeks ago, which should have triggered ... [an] obligation, to call his client up and realize that he was, in fact … in violation of this Court's orders[.]")).

Defense counsel requested an order from the Court setting clear deadlines for Plaintiff's production of the remaining discovery. (Dkt. #42 at 10-11). While Mr. Isaacs sought to explain away prior production deficiencies by noting that he was a sole practitioner with a busy trial schedule, he asserted that he was "free for the rest of the summer," and thus would have no problem complying with Court-ordered deadlines. (*Id.* at 14-15). On the particular topic of emails, Mr. Isaacs explained that he would review his client's computer

with her, and "produce every single document that I can." (*Id.* at 15; *see also id.* at 21 (committing to also involve "someone who is properly sophisticated with computers")).  The Court made plain to Mr. Isaacs that "at some point, I actually have to abide by the written warnings that I give," and, further, that "at some point, I'm just going to come to believe that you are not abiding by my orders or that your client is incapable of providing truthful responses to discovery issues." (*Id.* at 18).  The Court gave a more impassioned directive at the close of the conference:

> I do want to make clear to Mr. Isaacs and to Mr. Gleason, understanding everything you've said to me about your own law practices, your own experiences, and, I guess, the emotional state of your client, the fact remains that you should have produced these things earlier.  You need to produce them now.
>
> If depositions have to be rescheduled, then I think you ought to consider rescheduling them.  If the parties want to ask me for an extension — well, maybe you want until August 15th to start thinking about that, but I don't know, Mr. Isaacs, how to tell you more strongly and more honestly that I am disappointed and dissatisfied with the productions that have been made and with your and your client's conduct in discovery.  I leave it at that.  You've had every warning.  You've had it oral, you've had it written, you don't need me to repeat it again.  For the love of God, produce these materials because you understand the consequences if you don't. That's all I'm going to say on the subject.

(*Id.* at 22-23).

Later that day, the Court ordered:

> 1. That Plaintiff will produce all documents responsive to Defendant's First Set of Requests for Production on or before **July 22, 2022**;

2. That Plaintiff will respond to Defendant's Second Set of Requests for Production on or before **August 10, 2022**; and

3. That Plaintiff will produce all documents responsive to Defendant's Second Set of Requests for Production on or before **August 15, 2022**.

(Dkt. #36 (the "July 15 Order")).

## C.    The July 28, 2022 Conference[5]

Four days after the July 15 conference — and three days before the first deadline set forth in the July 15 Order — Mr. Isaacs wrote to the Court to advise that he and Mr. Gleason had been "discharged by the Plaintiff as her attorneys" in this case.  (Dkt. #38).  Defendant protested, noting Plaintiff's noncompliance with the Local Rules of this Court regarding attorney withdrawals (Dkt. #39), and Mr. Isaacs responded by seeking a conference with the Court (Dkt. #40).  The Court scheduled a conference for July 28, 2022.  (Dkt. #41).  One day before the conference, on July 27, 2022, defense counsel submitted a letter that outlined both the continued failure of Plaintiff and her Attorneys to produce the emails ordered by the Court and Defendant's more recent concerns about Plaintiff's spoliation of evidence.  (Dkt. #44).

The Court set the tone at the outset of the July 28 conference, making clear to Plaintiff's Attorneys that it did not believe that they had been discharged, that it recalled the commitments made and deadlines set just a few days earlier, and that it did not appreciate feeling as though it had been

---

[5]    The transcript of the July 28, 2022 conference was sealed by the Court because of references to Plaintiff's full name.  It is cited here using the convention "July 28 Tr."

"played." (July 28 Tr. 2-3).  Mr. Isaacs explained, in broad terms, the pre-suit inquiries he had made of Plaintiff, as well as his subsequent requests for information.  (*Id.* at 4).  His colleague, Peter Gleason, then explained his efforts to obtain additional responsive documents from his client after the July 15 conference, which efforts included meetings with Plaintiff on July 18 and 19, 2022; during the second meeting, Plaintiff identified three boxes, each of which could hold a ream of paper, as containing responsive documents, but refused to hand over the documents to her attorneys.  (*Id.* at 5-8).  According to Mr. Gleason, he advised Plaintiff that if she continued to refuse to hand over the documents, then either the Attorneys would move to withdraw or Plaintiff could discharge them as her counsel; Plaintiff elected to discharge them by email. (*Id.* at 8-9).  After the discharge, Mr. Gleason continued to attend previously-scheduled depositions, but only for continuity purposes (*i.e.*, counsel asked no questions).  (*Id.* at 9-10).[6]  The Court reminded Plaintiff's Attorneys that "the real issue" was the slate of discovery deadlines "that weren't complied with." (*Id.* at 14).  It also inquired whether Plaintiff in fact "want[ed] the case to continue."  (*Id.*).

---

[6]     Mr. Gleason explained that part of the reason he asked no questions at the deposition of Plaintiff's brother was that a prior deposition of Plaintiff's sister had yielded 16 pages of emails to or from Plaintiff that the Attorneys had supposedly neither seen nor produced, and the later deposition "was a repeat performance."  (July 28 Tr. 10-11). Mr. Gleason also explained to the Court that, despite his admonitions to Plaintiff to communicate with others only through counsel, Plaintiff's discovery of a website that disclosed her full name had been a "triggering moment" that caused Plaintiff to "start[] sending emails back and forth, unbeknownst to counsel and against counsel's advice." (*Id.* at 11).  The Court believes that some of these emails were contained in Defendant's June 1, 2022 production to Plaintiff and her Attorneys.

Defense counsel sought an opportunity to speak, during which he referenced "brazen disregard of court orders, and then in defense of the inexcusable violation of court orders blatant material misrepresentations of fact" by the Attorneys.  (July 28 Tr. 15-16).  Counsel lamented the difficulties Defendant had faced in defending himself in this case, which difficulties were exacerbated by the failures of Plaintiff and her Attorneys to produce "an untold number of responsive documents that are critical to our defense," by Plaintiff's deletion of critical communications with third parties, and now by misrepresentations made to the Court about the reasons for the Attorneys' withdrawal.  (*Id.* at 17-18).  On the last point, defense counsel disclosed that a relative of Plaintiff's had told the defense team that the Attorneys' discharge had in fact come about because Plaintiff thought that they were "sloppy" and had lost certain of her documents.  (*Id.* at 19).

Defense counsel offered a protocol that addressed the Attorneys' withdrawal and the continuation of the case, one that included sanctions on Plaintiff and her Attorneys, as well as a forensic examination of Plaintiff's devices.  (July 28 Tr. 21-25).  More troublingly, defense counsel theorized that the Attorneys had deliberately refrained from discharging their discovery obligations in this case (in terms of both gathering and producing discovery) because "if they did it would blow a gaping hole in their client's case.  So they slipped out the back rather than accept and assume responsib[ility] for two things: a violation of the order and this lawsuit, in the first instance."  (*Id.* at 26).  Mr. Isaacs then took a turn throwing his client under the proverbial bus,

musing as to his lack of knowledge of any spoliation, his efforts at compliance with the Court's discovery orders, and his shared "frustration" with his client. (*Id.* at 31).

After consulting with Plaintiff during a recess in the proceedings, Mr. Isaacs advised the Court and Defendant that Plaintiff sought to withdraw her complaint with prejudice. (July 28 Tr. 33; *see also id.* at 35 (Court allocution of Plaintiff regarding her withdrawal)). As the proceeding concluded, the Court gave Defendant one week to consider whether he wished to pursue sanctions and dismissed the case with prejudice. (*Id.* at 36).

### D. The Instant Motions

By letter dated August 4, 2022, Defendant requested leave to file a motion for sanctions pursuant to Federal Rule of Civil Procedure 37(b)(2) against Plaintiff's Attorneys, but not Plaintiff herself. (Dkt. #45). The Court set an extended schedule, recognizing that Defendant's motion was likely to implicate a conflict between Plaintiff and her counsel, and that Plaintiff might want to submit her own opposition to the motion. (Dkt. #46).

On October 3, 2022, Defendant filed his motion for sanctions and supporting documents. (Dkt. #49-51). On November 18, 2022, Plaintiff's Attorneys filed an opposition to Defendant's motion, as well as a cross-motion for leave to withdraw as counsel for Plaintiff. (Dkt. #55-59). On December 9, 2022, Defendant filed his reply memorandum in further support of his sanctions motion, which included as well his non-opposition to Plaintiff's Attorneys' motion to withdraw. (Dkt. #60). On December 15, 2022, Plaintiff's

13

Attorneys filed their reply submission in further support of their motion to withdraw.  (Dkt. #61).  There being no opposition, the Court now grants the motion to withdraw filed by Mr. Gleason and Mr. Isaacs, and proceeds to consider Defendant's motion for sanctions.

## DISCUSSION

### A.  Applicable Law[7]

Federal Rule of Civil Procedure 37 provides that when "a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders."  Fed. R. Civ. P. 37(b)(2)(A).  Such just orders may include "striking pleadings in whole or in part; ... dismissing the

---

[7]  Defendant moves for the imposition of sanctions pursuant to Rule 37, although in his reply submission he suggests that the Court could also fine the Attorneys under its inherent powers.  (Def. Reply 9 n.6).  Courts have "inherent power to supervise and control its own proceedings and to sanction counsel or a litigant for bad-faith conduct." *Sussman* v. *Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995); *see also Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) ("[A] court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons'" (quoting *Alyeska Pipeline Serv. Co.* v. *Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975))); *see generally Int'l Techs. Mktg., Inc.* v. *Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021). On top of this inherent power, 28 U.S.C. § 1927 authorizes a court to require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously ... to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927; *see also Madison 92nd St. Assocs., LLC* v. *Marriott Int'l, Inc.*, No. 13 Civ. 291 (CM), 2013 WL 5913382, at *12 (S.D.N.Y. Oct. 31, 2013) ("The purpose of § 1927 is to ensure that those who create unnecessary costs also bear them."), *aff'd sub nom. Boies, Schiller & Flexner LLP* v. *Host Hotels & Resorts, Inc.*, 603 F. App'x 19 (2d Cir. 2015) (summary order).

To impose sanctions under either authority, a court must find "clear evidence that the conduct at issue is [i] entirely without color and [ii] motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc.* v. *Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009); *see generally Doe 1* v. *E. Side Club, LLC.*, No. 18 Civ. 11324 (KPF), 2021 WL 2709346, at *19 (S.D.N.Y. July 1, 2021), *reconsideration denied*, 2021 WL 4711249 (S.D.N.Y. Oct. 8, 2021).  Indeed, the Second Circuit has recently confirmed that imposition of sanctions under either authority almost always requires a showing of bad faith.  *See Rossbach* v. *Montefiore Med. Ctr.*, — F. 4th —, No. 21-2084, 2023 WL 5519148, at *10 (2d Cir. Aug. 28, 2023).  While the Attorneys' representation of Plaintiff was deficient in numerous respects, several of which are discussed in the text, the Court cannot on this record conclude that either lawyer acted in bad faith.

action or proceeding in whole or in part; [or] rendering a default judgment against the disobedient party." *Id.* Further, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). "[T]he burden is on the violator to show that there was a substantial justification for the violation, or that circumstances would make it unjust to award reasonable expenses to the moving party." *In re Doria/Memon Disc. Stores Wage & Hour Litig.*, No. 14 Civ. 7990 (RWS), 2018 WL 1353261, at *5 (S.D.N.Y. Mar. 15, 2018) (internal quotation marks omitted), *cited in Thani* v. *Hanke*, No. 20 Civ. 4765 (JPC), 2023 WL 5744288, at *8 (S.D.N.Y. Sept. 6, 2023).

"Disciplinary sanctions under Rule 37 are intended to serve three purposes. First, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." *S. New England Tel. Co.* v. *Glob. NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010) (quoting *Update Art, Inc.* v. *Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988)); *see also City of Almaty* v. *Ablyazov*, No. 15 Civ. 5345 (AJN), 2021 WL 4846366, at *3 (S.D.N.Y. Oct. 18, 2021) ("The purposes of these sanctions are to ensure that a party does not profit from their disregard of court orders and to deter future

15

noncompliance."); *In re Sept. 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 132 (S.D.N.Y. 2007) (noting that Rule 37 sanctions are meant to "restore the parties to the position they would have occupied but for breach of discovery obligations and deter future misconduct").[8]

Several considerations inform a court's analysis of a motion for sanctions under Federal Rule of Civil Procedure 37, including: "[i] the willfulness of the noncompliant party or the reason for noncompliance; [ii] the efficacy of lesser sanctions; [iii] the duration of the period of noncompliance[;] and [iv] whether the noncompliant party had been warned of the consequences of noncompliance." *Agiwal* v. *Mid Island Mortg. Corp.*, 555 F.3d 298, 302-03 (2d Cir. 2009) (internal quotation marks and alteration omitted) (quoting *Nieves* v. *City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y. 2002)); *accord Doe* v. *Delta Airlines Inc.*, 672 F. App'x 48, 50 (2d Cir. 2016) (summary order).  Although a court has "wide discretion in imposing sanctions under Rule 37,"

---

[8]     *See also In re Gravel*, 6 F.4th 503, 515 (2d Cir. 2021), *cert. denied sub nom. Sensenich* v. *PHH Mortg. Corp.*, 142 S. Ct. 2829 (2022):

> Discovery sanctions under Federal Rule 37 are deterrents (specific and general) meant to punish a recalcitrant or evasive party.  *Nat'l Hockey League* v. *Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *see Update Art, Inc.* v. *Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).  A party might otherwise abuse or delay discovery, "embroil[ing] trial judges in day-to-day supervision."  *Cine Forty-Second St. Theatre Corp.* v. *Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).  "Without adequate sanctions the procedure for discovery would often be ineffectual," and the administration of justice would grind to a halt.  C. Wright & A. Miller, 8B Fed. Prac. & Proc. Civ. § 2281 (3d ed.).  Federal Rule 37 protects more than the interest of a party in remedying or avoiding certain costs; it protects the interests of the parties, the court, and the public in a speedy and just resolution of the case.

16

*Shcherbakovskiy* v. *Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (internal quotation marks omitted), "[t]here are two basic limitations" that cabin its discretion. *Daval Steel Prods.* v. *M/V Fakredine*, 951 F.2d 1357, 1366 (2d Cir. 1991); *accord Sentry Ins. a Mut. Co.* v. *Weber*, 720 F. App'x 639, 640 (2d Cir. 2017) (summary order). *First*, "the sanctions must be 'just[.]'" *M/V Fakredine*, 951 F.2d at 1366. *Second*, the sanctions "must relate to the particular claim to which the discovery order was addressed." *Id.* "When determining the appropriate remedy for a violation of Rule 37(b), a court 'should impose the least harsh sanction' that will 'serve as an adequate remedy; the range of sanctions, from the least harsh to the harshest, include further discovery, cost-shifting, fines, special jury instructions, preclusion, entry of default judgment, and dismissal.'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 21 Civ. 7504 (VSB), 2023 WL 3304287, at *5 (S.D.N.Y. May 8, 2023) (citations omitted) ("*In re Keurig*").

**B.  Analysis**

    **1.  Overview**

    In several respects, Defendant's motion for sanctions is unusual.  For starters, it is brought only against Plaintiff's Attorneys, and not against Plaintiff herself, even though the record suggests that a portion of the Attorneys' noncompliance may be attributable to Plaintiff.  The Second Circuit recently confirmed, however, that "[b]oth logic and the text of Rule 37(b)(2)(C) dictate that a court may impose sanctions in a targeted way against the actors whom it identifies as responsible for misconduct, whether those be parties, their

17

attorneys, or both." *Kyros L. P.C.* v. *World Wrestling Ent., Inc.*, 78 F.4th 532, 546 (2d Cir. 2023). The Court imagines that Defendant's decision not to pursue sanctions against Plaintiff is a kindness to her, and the Court appreciates it as such.

Another unusual aspect of this motion is that the ultimate relief Defendant could have sought — dismissal of the action with prejudice — has already been accomplished by Plaintiff. Nonetheless, the Court agrees that Defendant may pursue monetary sanctions. While prejudice is not a prerequisite to the award of damages under Rule 37(b), the fact remains that Defendant has been prejudiced by the filing of this action and by the Attorneys' noncompliance with Court orders. Plaintiff and her Attorneys lobbed heinous accusations of sexual abuse at Defendant, prompting widespread news coverage of her lawsuit. And yet Plaintiff refrained from producing nearly all of her responsive materials in discovery, and what evidence the Court has seen thus far undermines Plaintiff's allegations. Quite apart from the obvious reputational harm, Defendant has been forced to expend substantial sums of money in litigation defense costs. Finally, the Court recognizes that Rule 37(b) has both specific *and* general deterrence functions, in service of its ultimate goal of promoting compliance with court orders.

### 2. Sanctions on Plaintiff's Attorneys Are Warranted

After careful consideration of the record, and taking into account its own experiences in this case, the Court believes that some sanction should be imposed on Plaintiff's Attorneys for their noncompliance with one or more

Court orders regarding discovery.[9]  The Court arrives at this conclusion even as it draws every inference in the Attorneys' favor.

To begin, the Court recognizes that "[a] district court may only impose sanctions under Rule 37(b) for noncompliance with 'a clearly articulated order of the court requiring specified discovery.'"  *Susana* v. *NY Waterway*, No. 20 Civ. 455 (JPC), 2023 WL 2575050, at *10 (S.D.N.Y. Mar. 20, 2023) (quoting *M/V Fakredine*, 951 F.2d at 1363); *see also Salahuddin* v. *Harris*, 782 F.2d 1127, 1133 (2d Cir. 1986) ("Rule 37(b) sanctions require the violation of an explicit court order."); *In re Keurig*, 2023 WL 3304287, at *7 ("The two predicates to the imposition of sanctions under Rule 37(b) are (1) a court order directing compliance with discovery requests, and (2) non-compliance with that order." (internal quotation marks and brackets omitted)).  The Court had made clear to the parties at the initial pretrial conference its expectation that discovery deadlines would be adhered to by the parties; the case management plan it endorsed contained broad deadlines for fact and expert discovery, with a few interim deadlines specifically identified.  (Dkt. #21).  At that conference, in response to specific questions from the Court regarding electronic discovery, Plaintiff's Attorneys stated that Plaintiff had only a few responsive emails to produce.  (Dkt. #23 at 8).

On May 24, 2022 — more than a month after Plaintiff's discovery responses were due, and after several failed promises to comply were made by

---

[9]     In their opposition, the Attorneys suggest that Defendant seeks sanctions only with respect to the Court's July 15 Order.  (Pl. Att'y Opp. 8, 17).  Not so, as Defendant makes clear in his opening and reply submissions.  (*See, e.g.*, Def. Br. 1-4; Def. Reply 4-5).

her Attorneys — the Court explicitly ordered Plaintiff and her counsel to serve Plaintiff's responses to Defendant's interrogatories and document production requests on or before May 30, 2022. (Dkt. #27). Plaintiff (and, by extension, her Attorneys) did not comply with the Court's May 24 Order; while Plaintiff produced certain responses one day late, on May 31, 2022, she failed to produce nearly all responsive documents in her possession, as was made clear in subsequent discovery disputes between the parties.

One day later, on June 1, 2022, Defendant provided Plaintiff's Attorneys with some 60 emails to or from Plaintiff that Defendant had received in response to third-party subpoenas issued to Plaintiff's relatives. (Dkt. #63). These emails were both extremely relevant to this litigation and responsive to Defendant's requests for production. Inasmuch as Defendant had received this response to just a few third-party subpoenas, it had to have been clear to all by June 1 — including Plaintiff's Attorneys — that Mr. Isaacs's initial representations to the Court about ESI had been incorrect, and that at the very least, there were numerous responsive emails in the possession, custody, and control of Plaintiff. And yet Plaintiff's Attorneys made no inquiry of their client for nearly two months, despite the Court's May 24 Order, and despite a second reminder from defense counsel about Plaintiff's emails on June 8, 2022. (Dkt. #51-11 (June 8, 2022 letter from defense counsel to the Attorneys outlining deficiencies in Plaintiff's discovery responses and noting, with respect to pre-suit investigation, that such investigation "required … a careful review of all of your client's relevant emails, writings and other communications")).

20

Having blown past the Court's May 30 deadline, and having acknowledged their heretofore inadequate compliance with the Court's discovery orders, Plaintiff's Attorneys committed to making a substantial completion of the document production to defense counsel by June 30, 2022. (Dkt. #33 at 2).  Even then, as their 49-page production attests, Plaintiff's Attorneys made no effort to review Plaintiff's accounts for responsive emails or texts, and as such continued to be in violation of the Court's May 24 Order.

Between the June 30 "substantial completion" deadline and the July 15 conference with the Court, Plaintiff and her Attorneys were copied on a July 1, 2022 letter to this Court from defense counsel requesting a conference to address Plaintiff's discovery failures.  The July 1 letter again focused on Plaintiff's continuing failure to produce responsive emails:

> For example, Plaintiff did not produce a single email or text to or from anyone.  We are aware of many responsive and relevant email communications Plaintiff has exchanged with at least six individuals related to her claims, many of which cast doubt on the veracity of her claims.   These communications are directly responsive to, among other requests, Defendant's Request for Production No. 4, which calls for "[a]ny and all written communications (including, but not limited to, e-mails, letters, voicemails, and text messages) between Plaintiff and anyone ... related to Plaintiff's claims in this matter ...."

(Dkt. #33 at 2).  Mr. Isaacs responded for Plaintiff on July 5, 2022, but did not even attempt to respond to the emails issue.  (Dkt. #34).  At any time before the July 15 conference, Plaintiff's Attorneys could have addressed this issue with their client and complied with their obligations under the Court's May 24 Order.  Instead, counsel disclosed at the July 15 conference that, a few days

prior to the conference, his client had provided him with "one or two emails
and a couple of text messages" (Dkt. #42 at 5) — as if the prior seven weeks of
tussling over what all sides understood to be a trove of responsive emails in
Plaintiff's possession had never happened.  Once again, Plaintiff's Attorneys
acknowledged the shortcomings in their compliance with Court orders, but no
real progress was made.  (*Id.* at 6, 14-15).  After and as a result of the July 15
conference, the Attorneys committed to completing the production of Plaintiff's
emails within one week.  (Dkt. #36).  As the parties and their counsel know all
too well, that never happened.[10]

While the Second Circuit does not require prejudice as a prerequisite to
the imposition of monetary sanctions, *see Kyros L. P.C.*, 78 F.4th at 546,
Defendant was indisputably prejudiced.  At least two depositions were
conducted for which defense counsel lacked the relevant documents.  (*See*
July 28 Tr. 5, 9-11, 24-25, 29).  Further, whatever the genesis of Defendant's
decisions to secure the services of an investigator and to issue third-party

---

[10]     Defendant also contends that sanctions are warranted for Plaintiff's Attorneys failure to
comply with the Court's July 15 Order.  (Def. Br. 15-16; Def. Reply 5-6).  In particular,
Defendant faults the Attorneys for failing to abide by the deadlines set forth in that
Order and for misstating the fact and basis of their termination by Plaintiff.  (*Id.*).
Hewing to its earlier commitment to draw all permissible inferences in the Attorneys'
favor, the Court declines to predicate sanctions on the July 15 Order, although it
considers the run-up to and content of the July 15 conference in making certain
findings under the *Agiwal* factors.  Accepting Mr. Gleason's representations to the Court
as true, the Attorneys left the July 15 conference with every intention of ensuring their
client's full (if inexcusably belated) compliance with the Court's discovery orders.  Upon
meeting with their client and learning of the existence of three boxes of responsive
materials that Plaintiff refused to disclose even to them, counsel engineered their
withdrawal from the case if Plaintiff persisted with her refusal.  In other words, while it
is true that the Attorneys did not comply with the July 15 Order, compliance appears to
have been outside of their control.  Separately, the Court has an inadequate record to
support Defendant's claim during the July 28 conference that the Attorneys were
discharged for sloppiness or inattention to Plaintiff's documents.  (July 28 Tr. 19-20).

subpoenas on Plaintiff's family and friends, the fact remains that — because of Plaintiff's Attorneys' failure to discharge their discovery obligations under the relevant law and this Court's orders — Defendant needed these outside sources of information to confirm that the discovery that Plaintiff and her Attorneys were producing was woefully inadequate.  Defendant should not have been required to explain to Plaintiff's Attorneys what documents Plaintiff had in her possession in order to obtain the discovery to which he was entitled.

Review of the *Agiwal* factors supports the Court's imposition of some sanction on Plaintiff's Attorneys.  The Court finds that the Attorneys' noncompliance was willful.  In this setting, "[n]oncompliance with a court's discovery order is willful when the order is clear, the party understood the order, and the failure to comply is not due to factors beyond the party's control."  *Ramgoolie* v. *Ramgoolie*, 333 F.R.D. 30, 35 (S.D.N.Y. 2019). "Moreover, a persistent refusal to comply with court orders 'presents sufficient evidence of willfulness, bad faith, or fault.'"  *Grammar* v. *Sharinn & Lipshie, P.C.*, No. 14 Civ. 6774 (JCF), 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016) (quoting *Handwerker* v. *AT&T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002)). Plaintiff's Attorneys' blasé attitude towards their discovery obligations (and to the Court's May 24 Order in particular) over a period of months, despite multiple directives from the Court, and despite multiple detailed explanations from defense counsel concerning what materials were missing, constitutes willfulness.

On the issue of the efficacy of lesser sanctions, it is of course the case that Plaintiff's withdrawal of the action with prejudice removes the option of terminal sanctions from the Court's consideration.  That said, the monetary sanction the Court proposes in the next section, which is but a fraction of the fees and expenses incurred by Defendant, is at the less severe end of the sanction spectrum.  *See Thani*, 2023 WL 5744288, at *12 (discussing the appropriateness of monetary sanctions, described as "the mildest of sanctions" (citations omitted)).

As for the remaining factors, the procedural history of this case makes clear that the Attorneys' noncompliance with the Court's orders persisted over a period of weeks, if not months, in the face of numerous warnings from the Court.  (*See, e.g.*, Dkt. #27 at 2 ("Plaintiff is cautioned that future failures to meet the discovery deadlines set forth in the parties' case management plan or this Court's rules of individual practice will not be tolerated."); Dkt. #30 at 2 ("If, however, Plaintiff continues to neglect her responsibilities in this case, the Court will take appropriate action at that time.")).  All of the *Agiwal* factors, therefore, counsel in favor of sanctions.

Conversely, the Court rejects the Attorneys' arguments in opposition to sanctions.  To begin, any arguments about the press of business or the comparative size of the parties' legal teams fall flat, insofar as Plaintiff's Attorneys voluntarily took on this concededly headline-grabbing representation.  *Cf. Hochstadt* v. *N.Y. State Educ. Dep't*, 547 F. App'x 9, 11 (2d Cir. 2013) (summary order) ("[The attorney] has instead argued that, to the

extent she included sanctionable claims in the fourth amended complaint, the inclusion was the mistake of an overwhelmed and inexperienced solo practitioner.  This 'empty-head pure-heart' justification is insufficient to protect her from Rule 11 sanctions."); *Jones* v. *E. Hartford Police Dep't*, No. 13 Civ. 1007 (WWE), 2014 WL 6783148, at *1 (D. Conn. Dec. 2, 2014) ("Although the Court appreciates the burdens faced by many solo practitioners, particularly when compounded by a medical condition, this does not excuse Attorney Miller's complete neglect of all deadlines or her failure to respond to motions and court orders.").[11]

Similarly unavailing is the Attorneys' suggestion that the fault lies with Defendant because of the "aggressive[ness]" of his discovery demands.  (*See* Pl. Att'y Opp. 7).  The Court has reviewed the discovery demands at issue, which were relevant and proportional to the needs of the case.  And it is worth noting that Defendant extended numerous courtesies to Plaintiff's Attorneys early on in the discovery process, and only sought Court intervention when the Attorneys failed to keep their own promises regarding production.

Finally, the Court is perplexed by the Attorneys' current efforts to shift the burden to Defendant to demonstrate what, precisely, were the inadequacies in Plaintiff's production and how Defendant was prejudiced as a result.  (*See* Pl. Att'y Opp. 10, 17).  Put simply, neither Defendant nor the Court can determine the significance of the Attorneys' noncompliance because three boxes of

---

[11]     The Court will, however, consider the size of the Attorneys' firms in assessing sanctions.

relevant documents — not to mention a substantial number of responsive emails — were never produced.  And as Defendant noted, the emails that he was able to obtain in third-party discovery "cast doubt on the veracity of [Plaintiff's] claims."  (Dkt. #33 at 2).[12]

For all of these reasons, the Court has concluded that sanctions are warranted against Plaintiff's Attorneys under Rule 37(b).  *See Joint Stock Co. Channel One Russia Worldwide* v. *Infomir LLC*, No. 16 Civ. 1318 (GBD) (BCM), 2019 WL 4727537, at *30 (S.D.N.Y. Sept. 26, 2019) ("In this case, the sanctionable conduct was committed by counsel.  Effective deterrence therefore demands that the monetary sanction also run against counsel."), *aff'd sub nom. Joint Stock Co. "Channel One Russia Worldwide"* v. *Infomir LLC*, No. 16 Civ. 1318 (GBD) (BCM), 2020 WL 1479018 (S.D.N.Y. Mar. 26, 2020).  The form that the sanctions takes is discussed in the next section.

### 3.    The Sanctions Imposed

Defendant asks this Court to impose a $50,000 sanction on Plaintiff's Attorneys, for which they would be jointly and severally liable, as well as the costs of this motion.  (Def. Br. 4).  As noted, under Rule 37(b)(2)(C), the Court "must" award the expenses, including attorneys' fees, caused by the failure to comply with the Court's orders, "unless the failure was substantially justified or other circumstances make an award unjust."  *See also Cine Forty-Second St.*

---

[12]    The Court does not address Plaintiff's Attorneys' references to the "nature and impact of childhood sexual abuse" on their client (Pl. Att'y Opp. 11), inasmuch as (i) the Court has no evidence of any such abuse and (ii) the focus of this Opinion is on the conduct of Plaintiff's Attorneys, and not Plaintiff herself.

*Theatre Corp.* v. *Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979) (characterizing an award of fees to reimburse the wronged party for its expenses caused by the failure to cooperate as the "mildest" sanction available under Rule 37).

The Court initially considered a limited award of fees and expenses, one specifically tied to Plaintiff's Attorneys' failures and misstatements concerning Plaintiff's emails.  Under that theory, the period of noncompliance began on May 30, 2022, when the Attorneys failed to abide by the Court's May 24 Order, and continued through the Attorneys' withdrawal from the case.  However, the Court also considered narrowing the temporal window of noncompliance, focusing on the time period in which Plaintiff's Attorneys knew *both* that their prior representations to the Court had been incorrect *and* that Plaintiff possessed responsive emails that they had failed to produce.  At its narrowest, the window spanned from July 1, 2022 (the day after the "substantial completion" deadline), until July 15, 2022 (the conference with the Court during which new production deadlines were set).  Even then, the attorneys' fees and costs owed to Defendant would have been substantial.  On reflection, the Court has determined to impose an award on each Attorney, $5,000 on Mr. Isaacs and $3,000 on Mr. Gleason, after concluding that the circumstances of this case would make an award of full expenses "unjust" under Rule 37.[13]

---

[13]     While the bulk of the discovery component of the litigation was handled by Mr. Isaacs, Mr. Gleason was copied on the relevant correspondence, participated in the relevant conferences, and appeared in the litigation as co-counsel.  There is no basis to refrain from sanctioning Mr. Gleason for his actions, or inaction, in this matter, although the

The Attorneys' noncompliance with the Court's discovery orders, while significant, was comparatively short-lived.  The lawsuit against Defendant has been dismissed, which of course was Defendant's principal objective.  And while the Attorneys' brief in opposition to Defendant's sanctions motion outrageously argues that "the simple fact of the matter is that nothing has been established to prove Defendant's innocence or his alibi defense" (Pl. Att'y Opp. 21), this Court's review of the record discloses nothing to support Plaintiff's claims of abuse, and a fair amount of evidence to undermine them.  On that point, it cannot seriously be disputed that Plaintiff is a troubled woman, and she has the Court's sympathy.  The Court observed firsthand the challenges that Plaintiff posed as a client, and is confident that Plaintiff's Attorneys' noncompliance is at least partly attributable to her.  While it might have behooved everyone in this litigation for Plaintiff's Attorneys to have conducted a more robust pre-suit investigation, or to have ensured *ex ante* that Plaintiff understood and was willing to comply with her discovery obligations, that is beyond the scope of this Rule 37(b) motion.

Other factors inform the Court's decision that an award of full expenses, even temporally limited, would be unjust.  The Court is mindful of the fact that each of the Attorneys is a sole practitioner, who very likely took this case on a contingency basis.  What is more, determination of the costs incurred by Defendant during any period of noncompliance identified by the Court would

---

amount of his sanction is less than that imposed on Mr. Isaacs because of the difference in first-chair responsibilities.

itself require substantial additional proceedings.  *See Hensley* v. *Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation.").  Even if, as Defendant suggests, each Attorney sought to gain fame from filing the instant lawsuit, such plans have certainly backfired in light of its spectacular failure.  More to the Rule 37(b) point, neither the Attorneys here nor other attorneys reviewing this case would be incentivized by this Opinion to violate court orders regarding discovery.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Defendant's motion for sanctions against Attorneys Isaacs and Gleason, and GRANTS the Attorneys' motion to withdraw.  The Court awards sanctions in the amount of $5,000 against Mr. Isaacs and $3,000 against Mr. Gleason, payable to Defendant on or before **October 31, 2023**.

The Clerk of Court is directed to terminate the motions at docket entries 49 and 55.

SO ORDERED.

Dated:   September 28, 2023
         New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge